UTAH INTERNATIONAL, INC., a corporation, and Nevada Electric Investment Company, a corporation, Plaintiffs,

v.

DEPARTMENT OF the INTERIOR OF THE UNITED STATES; James G. Watt, Secretary of the Interior; the Office of Surface Mining; J.R. Harris, Director of the Office of Surface Mining; the Environmental Defense Fund; Friends of the Earth; the Sierra Club; Sylvan Johnson; Leon Lippincott; Caroline Lippincott; Jet Mackelprang; Cynthia Myers; Susan Hittson; Larry Little; Gary A. Kalpakoff; Joan A. Kalpakoff; and East Canyon Irrigation Company, Defendants.

STATE OF UTAH, By and Through its DIVISION OF STATE LANDS AND FORESTRY and Its DIVISION OF OIL, GAS AND MINING, Plaintiffs,

v.

James G. WATT, Secretary of the United States Department of the Interior, and the United States of America, Defendants.

SIERRA CLUB, a non-profit corporation; Friends of the Earth, a non-profit corporation; Jet Mackelprang; Cynthia Myers; Susan Hittson; and Caroline Lippincott, Plaintiffs,

v.

James G. WATT, in his capacity as Secretary of the United States Department of the Interior; the Department of the Interior of the United States; Andrew V. Bailey, in his capacity as Acting Director of the Office of Surface Mining; the Office of Surface Mining; Utah International, Inc., a corporation; and Nevada Electric Investment Company, a corporation, Defendants.

Civ. Nos. C-81-0090W, C-81-0093W and C-81-0172W.

United States District Court, D. Utah, C.D. Dec. 28, 1982.

Allan N. Littman, Michael R. Barr, Ronald E. Van Buskirk, John M. Grenfell, San Francisco, Cal., F. Alan Fletcher, Robert Pruitt, III, Salt Lake City, Utah, for plaintiffs Utah Intern., Inc., and Nevada Elec. Inv. Co.

Brent D. Ward, U.S. Atty., Joseph W. Anderson, Asst. U.S. Atty., Salt Lake City, Utah, Alfred T. Ghiorzi, Ezra D. Rosenberg, Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for Federal defendants.

David Mastbaum, Environmental Defense Fund, Denver, Colo., William J. Lockhart, Wayne McCormack, Salt Lake City, Utah, for defendants-intervenors Environmental Defense Fund, Inc., Sylvan Johnson, Leon Lippincott, Larry Little, Gary A. Kalpakoff, and East Canyon Irrigation Co.

William S. Curtiss, H. Anthony Ruckel, Sierra Club Legal Defense Fund, Inc., Denver, Colo., Wayne G. Petty, Salt Lake City, Utah, for defendants Sierra Club, Friends of the Earth, Jet Mackelprang, Cynthia Myers, Susan Hittson, and Caroline Lippincott.

Anne M. Stirba, Asst. Atty. Gen., Carolyn Driscoll, Sp. Asst. Atty. Gen., Salt Lake City, Utah, for plaintiff State of Utah.

## MEMORANDUM DECISION

WINDER, District Judge.

Presently pending in this case are several motions and cross-motions for summary judgment. These motions were argued on September 30, 1982. Plaintiffs Utah International, Inc., and Nevada Electric Investment Co., (hereinafter referred to as "UII and NEICO") were represented by Ronald E. Van Buskirk, Allan N. Littman, and F. Alan Fletcher. The Sierra Club, Friends of the Earth, Jet Mackelprang, Cynthia Myers, Susan Hittson, and Caroline Lippincott (hereinafter referred to as the "Sierra Club defendants") were represented by William S. Curtiss. The Environmental Defense Fund, Inc., Sylvan Johnson, Leon Lippincott, Larry Little, Gary A. Kalpakoff, Joan A. Kalpakoff, and East Canyon Irrigation Company (hereinafter referred to as the "EDF defendants") were represented by William J. Lockhart and David Mastbaum. The State of Utah was represented by Anne M. Stirba. Representing the United States Department of Interior; James G. Watt, Secretary of Interior; the Office of Surface Mining; and Richard Harris, Director of the Office of Surface Mining (hereinafter

referred to as the "Federal defendants"), were Alfred T. Ghiorzi, Walton Morris, and Joseph Anderson. After the hearing the court again reviewed the memoranda of counsel, the authorities cited therein and the affidavits and exhibits on file. Based upon the foregoing, the court renders the following decision.

This dispute arises out of a December 16, 1980, decision by the then Secretary of Interior Cecil D. Andrus whereby certain federal lands in Kane and Garfield Counties, Utah, were designated as unsuitable for surface coal mining. This designation was made pursuant to § 1272 of the Surface Mining Control and Reclamation Act of 1977 (hereinafter referred to as "SMCRA"). The petition for a designation of unsuitability was filed on November 28, 1979, by the Environmental Defense Fund, Friends of the Earth, Sierra Club Legal Defense Fund, Sylvan Johnson, Leon Lippincott, Caroline Lippincott, Jet Mackelprang, Cynthia Myers, Susan Hittson, and Larry Little. The petition was submitted to the Office of Surface Mining Reclamation and Enforcement (hereinafter referred to as "OSM"). The petition area enclosed approximately 325,000 acres or more than 500 square miles. About 203,900 acres, excluding Bryce Canyon National Park, are owned by the federal government, 16,300 acres are owned by the State of Utah, and 68,600 acres are privately owned. The petition applied only to federal lands. Only a portion of the 203,900 acres of federal land included within the petition area was designated as unsuitable for surface mining. This area is commonly referred to as the Alton Coal Fields and lying generally northeast of these coal fields is Bryce Canyon National Park which is situated on the edge of the Paunsaugunt Plateau. UII and NEICO had obtained coal leases for areas located within the designated areas during the period 1961–1968 and claim to have spent substantial amounts in their development. The unsuitability designation precluded UII and NEICO from extracting the coal through surface mining. The original petition suggested several reasons why the area should be designated as unsuitable for surface mining. Contentions were made that the land could not be reclaimed following surface mining, that mining would adversely impact Bryce Canyon National Park and visitors to the park, that mining would adversely affect water resources and renewable resource lands (i.e., grazing and agricultural lands), and that alternative energy resources were available. The Secretary rejected all reasons contained in the petition except the adverse impact on the park and its visitors. 30 U.S.C. § 1272(a)(2) provides that an area may be designated as unsuitable if the surface coal mining operation would affect fragile or historical lands in a manner that could cause significant damage to important historic, cultural, scientific, and aesthetic values to natural systems. The decision by the Secretary that the land in question should be designated as unsuitable was made on this basis. This unsuitability petition was the first ever presented to the Secretary pursuant to 30 U.S.C. § 1272.

Following the Secretary's decision and on February 12, 1981, UII and NEICO filed suit in this court for an injunction and declaratory relief to set aside the Alton Decision on the basis that it was arbitrary and capricious, that it impaired plaintiffs' contractual rights under their coal leases with the United States and others and that it constituted a taking of private property for public purpose without due process of law.

On February 13, 1981, the State of Utah filed suit seeking a declaratory judgment that the decision of the Secretary was arbitrary and capricious in that it failed to consider state lands and denied the State of Utah the economic benefit of their lands. Although the Secretary's decision pertained only to federal land, there were approximately 12,400 acres of state owned school trust lands contained within the geographical boundaries of the designated area. The state alleges that if it were to allow development of these lands it would frustrate the purpose of the Secretary's designation. Furthermore, the state is fearful that the federal government will deny it the right-

of-ways over federal land necessary for access to the state lands.

On March 13, 1981, the other parties to this lawsuit filed a complaint seeking injunctive and declaratory relief on the basis that the failure to designate all of the petitioned area as unsuitable was arbitrary and capricious and that in failing to do so the Secretary violated his trust responsibilities which require him to preserve and protect Bryce Canyon National Park for the benefit of the public. This suit requests only that that portion of the decision which failed to designate land as unsuitable be reviewed. These three cases were subsequently consolidated. The other facts which are relevant to this court's decision will be reviewed in the context of the issues to which they relate.

UII and NEICO complain in Paragraph 26 of their complaint that "[t]he Secretary and his delegates failed to afford plaintiff a fair opportunity to protect their rights, in violation of the Act, the Administrative Procedure Act [hereinafter referred to as the "APA"] (5 U.S.C. § 551 *et seq.*), and the Fifth Amendment to the United States Constitution," by failing to require petitioners to assume a burden of proof, by disallowing cross-examination of adverse witnesses and by admitting evidence into the record without proper foundation. In essence UII and NEICO complain that the hearings should have been adjudicatory rather than legislative. The court understands UII and NEICO to argue that first the law requires that such a hearing be adjudicatory and second that even if the law does not so require, the regulations promulgated under the Act grant the Secretary discretion to require an adjudicatory hearing and that under the facts of this case it was an abuse of discretion not to have done so. UII and NEICO seek summary judgment to this effect.

The regulations establish "minimum procedures and standards for designating federal lands as unsuitable for ... surface coal

mining ...." 30 C.F.R. § 769.1 (1980).[1] Among other things, they provide that "no party shall bear any burden of proof ...", 30 C.F.R. § 769.14(d) (1980), and that "[t]he hearing shall be legislative and fact-finding in nature, without cross-examination of witnesses." 30 C.F.R. § 796.17(a) (1980).

To the extent that UII and NEICO challenge the unsuitability determination on the basis that the law requires an adjudicatory hearing, they are challenging the regulations. Section 1276 of Title 30 of the United States Code provides that

[a]ny action by the Secretary promulgating national rules or regulations including standards pursuant to sections 1251, 1265, 1266 and 1273 of the title shall be subject to review in the United States District Court for the District of Columbia Circuit ... A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action ....

The Federal defendants have moved for partial summary judgment on UII and NEICO's challenge to the regulations on the basis that the only court that can hear such a challenge is the District Court for the District of Columbia and on the grounds that the challenge was filed more than sixty days after the regulations were promulgated which deprives any court of jurisdiction to hear the challenge.

These same issues were addressed by the Sixth Circuit in *Holmes Limestone Co. v. Andrus,* 655 F.2d 732 (6th Cir.1981), *cert. denied* — U.S. —, 102 S.Ct. 2280, 72 L.Ed.2d 1292 (1982). The court there concluded that Congress did not intend to limit jurisdiction over such matters to only the District Court for the District of Columbia nor did they intend to establish what essentially is a statute of repose of sixty days. This court agrees that jurisdiction over such matters is not vested exclusively in the District Court for the District of Columbia.

The Sixth Circuit stated that

---

1. Citations to the regulations are to those that were in effect at the time the petition for an

unsuitability designation was being processed.

[t]he legislative history of the Act indicates that both Senate and House versions of the bill that was considered expressly stated that such review was to be *only* in the District of Columbia, but the word *only* was later deleted in the Conference Committee bill that was finally adopted. If Congress had desired to limit jurisdiction to the District of Columbia, it would never have deleted the word *only* from the bill.

*Id.* at 737 (emphasis original).

Although this court is unable to determine if and when either the House or Senate version of the bill contained the limiting word "only", it is certain that Congress was aware that the Administrative Conference and Legislative Counsel had suggested the use of such language. 1977 U.S.Code Cong. & Ad.News vol. 2 at 593, 696–97. The failure to adopt such language indicates that Congress did not intend to vest jurisdiction over such matters exclusively in the District of Columbia Circuit. The effect of the bill as passed is to vest concurrent jurisdiction in both the District Court for the District of Columbia and the District Court in the district in which the event which gave rise to the challenge of the regulations occurred.

As to the sixty day statute of repose, *Holmes Limestone* states only that there are serious questions about the propriety of such a limitation and the court refused to enforce such a provision without clear statutory support therefor which the court found to be lacking. This court disagrees. The language of the statute clearly and specifically requires that challenges to national rules be filed within sixty days of their promulgation. There is nothing in the legislative history which would indicate that Congress did not mean what it said.

The evil present in *Holmes Limestone* was the inability of the plaintiff to obtain judicial review of the action of the Secretary which precluded certain mining. *Holmes Limestone* at 740 (Judge Merritt concurring). The same problem does not exist in this case. The sixty day limit does not preclude judicial review of the Secretary's unsuitability designation. It does however determine the standard of review to be applied by this court. Perhaps this involves the same constitutional issues never reached by *Holmes Limestone,* but those issues have not been raised in this case.

Since UII and NEICO have not challenged the sixty day limitation, they are bound thereby. The filing of their challenge to the regulations allowing a legislative hearing being filed more than sixty days after the regulations were promulgated divests this court of jurisdiction to hear this claim. *In re Surface Mining Regulation Litigation,* 456 F.Supp. 1301, 1307 (D.D.C.1978); *cf., Homestake Mining Co. v. United States Environmental Protection Agency,* 584 F.2d 862, (8th Cir.1979) (limitation period in Clean Water Act determined to be jurisdictional); *Sears Roebuck & Co. v. Environmental Protection Agency,* 543 F.2d 359, (D.C.Cir.1976) (limitation period in Clean Air Act determined to be jurisdictional). This ruling also precludes review of whether or not a federal petition process is authorized by SMCRA.[2]

This court recognizes that this ruling only delays the ultimate determination on these issues since UII and NEICO can amend their complaint to properly challenge the sixty day limitation period. However, a properly pled issue results in a clearer focus by the court and avoids the rendering of an advisory opinion.

■■■ The Federal defendants and the EDF defendants have both made cross-mo-

---

**2.** All parties except the State of Utah moved or cross-moved for summary judgment on this latter issue. In their complaint UII and NEICO allege that SMCRA authorizes unsuitability petitions only as to state lands. Arguably, this would also mean that petitions for termination of unsuitability designations concerning federal lands would not be allowed.

Implied in this latter ruling is a determination that this court is without jurisdiction to determine whether or not a federal petition process, if authorized, can apply only to unleased federal lands and not leased lands. No specific motion was made on this last issue but it was discussed in some of the memoranda.

tions for summary judgment on the second portion of UII's and NEICO's motion which addresses whether or not the Secretary abused his discretion in not requiring that certain adjudicatory procedures be followed during the hearing.[3] UII and NEICO emphasize the effect of the unsuitability designation on their "property interests" as the basis for requiring adversary process. The EDF defendants quite properly point out that there is a genuine issue as to whether or not UII's and NEICO's coal leases are unqualified property interests fully entitled to all the protections of due process encompassed in adversary process.

It is true that UII and NEICO own coal leases. However, they have not yet obtained permits to extract the coal covered by those leases. It is also not a foregone conclusion that mining permits would be granted. Furthermore, the unsuitability designation only forecloses surface coal mining and it does not preclude extraction of the coal by other means. The extent of procedural rights available for protection of a property interest is dependent upon legal arrangements which may qualify or define the scope of a party's legal interest in the property. *See, e.g., Arnett v. Kennedy,* 416 U.S. 134, 153–55, 94 S.Ct. 1633, 1643–45, 40 L.Ed.2d 15 (1974); *Bishop v. Wood,* 426 U.S. 341, 345, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976). The uncertainty concerning the nature of UII's and NEICO's claimed property interests requires that their motion for partial summary judgment be denied.

■ For purposes of their cross-motion on this same issue, the Federal defendants' arguments assume that UII and NEICO have unqualified property interests in the leased land. They contend however that even so, the Secretary did not abuse his discretion in denying the requests for adversary process. The Sierra Club and EDF defendants both question whether the Secretary even had discretion to allow such procedures in light of the regulations pro-

mulgated by the agency. *See,* 30 C.F.R. §§ 769.14(d), 769.17 (1980). They cite *United States v. Nixon,* 418 U.S. 683, 695–96, 94 S.Ct. 3090, 3100–01, 41 L.Ed.2d 1039 (1974) and *United States Lines, Inc. v. Federal Maritime Commission,* 584 F.2d 519, 416 n. 20 (D.C.Cir.1978) for authority that agencies cannot depart from their own regulations. This court agrees that agencies cannot relax standards established by regulations if prejudice results. *See, Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir.1981). However, it is the opinion of this court that agencies, in their discretion, may require procedures which are more rigorous than those defined in the regulations so long as the parties are given sufficient notice to properly prepare. The purpose of the rule that federal agencies are required to abide by their own regulations is to prevent a violation of due process. *United States v. Newell,* 578 F.2d 827, 834 (9th Cir.1978). Deviation from the regulations in a manner suggested by UII and NEICO would only have provided greater protection of due process. The regulations themselves suggest that the Secretary could have imposed more rigorous procedures in this case in stating that they only establish *minimum* procedures. 30 C.F.R. § 769.1 (1980). This same principle is applied in *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 546, 98 S.Ct. 1197, 1213, 55 L.Ed.2d 460 (1977). In that case the Supreme Court stated that there is "little doubt that Congress intended that the discretion of the *agencies* and not that of the courts be exercised in determining when extra procedural devices should be employed." (emphasis original).

■ The EDF and Sierra Club defendants next argue that even if agencies may require more rigorous procedures than those prescribed by regulations, the exercise of such discretion is not reviewable by the courts. *Vermont Yankee* lends support to this position.

---

3. The Sierra Club defendants devote a large portion of their reply brief to this issue but failed to make a specific motion in support of their position in their moving papers. *See,*

Sierra Club Defendants' Reply Memorandum in Support of Motion for Partial Summary Judgment 10–18.

"[A]gencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if agencies have not chosen to grant them. This is not to say necessarily that there are no circumstances which would ever justify a court in overturning agency action because of a failure to employ procedures beyond those required by the statute. But such circumstances, if they exist are extremely rare."

*Id.* at 524, 98 S.Ct. at 1202. Agencies are allowed this discretion because of their familiarity with the interests which they regulate. Because of this familiarity they are in a better position to determine what procedures will best protect the interests of the parties and at the same time facilitate the tasks of the agency involved. *Id.* at 525, 98 S.Ct. at 1202. There is wisdom in this approach, particularly when expeditious determination is a goal as it is in unsuitability determinations. 30 U.S.C. § 1272(e). The *Vermont Yankee* case requires that great deference be exercised in favor of the agency. However, this deference is not absolute. The Supreme Court went on to identify two exceptions to this rule. "Absent constitutional constraints or extremely compelling circumstances the 'administrative agencies "should be free to fashion their own rules ...."'" *Id.* at 543, 98 S.Ct. at 1211. It is the duty of this court to determine whether this case presents an issue of constitutional constraints or extremely compelling circumstances.

■ There can be little doubt in reading SMCRA and its legislative history that the focus of the petition designation process is land use planning. This involves the weighing of several competing policy and value considerations that affect several parties. Decisions of this nature are best arrived at through legislative rather than adjudicatory hearings. UII and NEICO contend that the Alton proceedings were not of this nature, but rather that they focused specifically on plaintiffs' interests as evidenced by the Secretary's and OSM's "detailed factual determinations *directed specifically* at mining of plaintiffs' leases." Memorandum of Utah International, Inc. and Nevada Electric Investment Co. in Support of Motion for Partial Summary Judgment on Procedural Issues 18 (emphasis original).

■ UII and NEICO argue that [t]he Alton decision does not result in a 'rule' or 'regulation' of general application either to surface coal mining or to public parks. For example, with respect to the noise question, the Secretary's decision does not hold that in the future surface coal mining operations outside of all national parks will be deemed unsuitable, if mining noise purportedly is audible to park visitors.

Memorandum of Utah International, Inc. and Nevada Electric Investment Co. in Support of Motion for Partial Summary Judgment of Procedural Issues 26. These arguments fail to recognize that an adjudicative fact may be quite general and a legislative fact may be quite specific, 3 K. Davis, Administrative Law Treatise 153 (2d ed.1980), and that not all parks are designated as such for the same intrinsic values. Bryce Canyon National Park is apparently one of the quietest places on earth and this quietness was a value that the Secretary was concerned with. The uniqueness of each park is such that an unsuitability determination relating to one park is not necessarily relevant to other parks. It must also be remembered that the petition included much more land than what was ultimately determined to be unsuitable.

The fact that the unsuitability designation prohibits mining by only one or two entities does not make it an adjudication. *See, Hercules, Inc. v. Environmental Protection Agency,* 598 F.2d 91, 118 (D.C.Cir. 1978); *Anaconda Co. v. Ruckelshaus,* 482 F.2d 1301 (10th Cir.1973). The effect is much broader. In this case the decision affects the national interest in the park and each individual who visits the park. *See also, Hercules, Inc. v. Environmental Protection Agency,* 598 F.2d at 118.

The Secretary's focus on UII's and NEICO's proposed mining operation likewise

does not make the decision an adjudication.[4] Again, this ignores the distinction between specific facts and adjudicative facts. An unsuitability decision cannot be made in a vacuum. To determine the affects of surface mining, the decision maker must either refer to a hypothetical operation or an existing or proposed operation. Reference to a proposed operation may well provide a better basis for a decision than a hypothetical one because it reduces the amount of speculation engaged in by the decision maker. The fact that specific facts are gathered does not mean that certain rights were adjudicated. The facts must be gathered in order to provide a basis for a decision of general applicability.

 UII and NEICO next argue that Congress intended that the hearing be adjudicatory as evidenced by the requirement that certain procedures which are normally associated with adjudicatory proceedings be followed, *i.e.,* the requirement that a "petition" containing "allegations of fact" with "supporting evidence" be filed, the allowance of "intervention" and the requirement that "a written decision" with a "statement of reasons" be issued. To its credit, Congress recognized that these procedures would best serve to protect the interests of parties such as UII and NEICO while allowing the objectives of SMCRA to be accomplished. Congress stopped short of requiring an adjudicatory hearing apparently in recognition of the fact that such procedures could be used to frustrate the accomplishment of SMCRA's objectives. Just because Congress specifically provided for some adjudicatory procedures does not mean they intended that more be implemented. If that were their desire, they could have done so. As is evident from SMCRA itself, Congress knew that all they needed to do to mandate such a proceeding was to state that the hearing must be "on the record." They did so in other parts of the Act. 30 U.S.C. §§ 1275, 1264(c), 1268(b), 1275(a)(2), 1275(d) and 1293(b). Admittedly, a recitation of the phrase "on the record" is not absolutely necessary in requiring an adjudicatory hearing. However, the absence of this phrase furnishes a strong argument in support of the contention that the hearing was intended not to be adjudicatory, *Phillips Petroleum Co. v. Federal Power Commission,* 475 F.2d 842, 851 (10th Cir.1973), *cert. denied sub nom., Chevron Oil Co., Western Division v. Federal Power Commission,* 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974), particularly when it appears in other sections of the Act. *Anaconda,* 482 at 1306. This argument is even stronger when there is no alternate language indicating a clear Congressional intent that the hearing be adjudicatory. *See also, United States v. Florida East Coast Railway Co.,* 410 U.S. 224, 237–38, 93 S.Ct. 810, 817, 35 L.Ed.2d 223 (1972).

 The factual determinations made by the Secretary related to matters of public policy and value choices: the effect of general phenomena upon the national park, the experience of park visitors, or upon the condition of public properties. This court is convinced that the Alton decision was a rulemaking proceeding for which additional procedural devices were not required under the Constitution. There is also nothing about these facts which is extremely compelling. Therefore, it was not an abuse of the Secretary's discretion to deny UII's and NEICO's request for adjudicatory proceedings.[5]

---

**4.** In making his decision, the Secretary considered such things as noise which would result from the trucks and other machines proposed to be used by UII and NEICO.

**5.** This decision does not preclude UII and NEICO from continuing to argue that they were not given adequate time to comment on certain studies, particularly the noise study. This argument now goes to whether or not there was substantial evidence to support the decision. Failure to expose evidence to full public scrutiny diminishes the confidence in its accuracy. *Aqua Slide 'N' Dive Corp. v. Consumer Product Safety Commission,* 569 F.2d 831, 842 (5th Cir. 1978). Whether or not the noise study was sufficiently exposed to public scrutiny is a factual question as evidenced by the many facts cited to the court by the parties in support of their respective positions. This determination depends a great deal on the nature and complexity of the study. This question can better

■ UII and NEICO allege in paragraph 27 of their complaint that

[t]he Secretary's decision is arbitrary, capricious and inconsistent with law in that Section 522(1)(3)(B) of the Act does not authorize the Secretary to designate lands *outside* the boundaries of a national park unsuitable, for the ostensible purpose of protecting the "visitor experience" of persons who travel to distant viewpoints in the Park, where the record shows that mining will have no adverse environmental impact on the Park itself.

(emphasis in original). In their memorandum in opposition to the Defendants' Motions for Partial Summary Judgment at 26–27, UII and NEICO explain that the essence of this argument is "that the thrust of § 1272 and the Act itself, is to prohibit surface coal mining only where significant and irreparable damage result." They admit that areas outside of national parks may be designated as unsuitable for surface mining if such mining would have an adverse impact upon the national parks. *Id.* at 26. The Sierra Club defendants contend that "irreparable damage" is not required to sustain a designation based upon the permissive unsuitability criteria of 30 U.S.C. § 1272(a)(3). They seek summary judgment to this effect.

Section 1272(a)(3) of Title 30 states that "a surface area may be designated unsuitable for certain types of surface coal mining operations if such operations will ... (b) affect fragile or historic lands in which such operations could result in significant damage to important historic, cultural, scientific, and aesthetic values and natural systems ...." *See also,* 30 C.F.R. § 762.11(b) (1980). There is nothing in either the code or the regulations that require a finding of irreparable harm in order to designate an area as unsuitable. After having read the legislative history, particularly those portions cited by the parties to this motion, this court is of the opinion that 30 U.S.C. § 1272(a)(3)(B) requires only that damage to the interests enumerated therein be significant. It is not required that it be irrep-

arable or permanent. This is not to say that it is inappropriate for the Secretary to consider the temporary or permanent effect of surface mining on those interests in determining whether the damage is significant. Therefore, Sierra Club defendants' motion for summary judgment to the effect that irreparable damage is not a requirement for an unsuitability determination made pursuant to 30 U.S.C. § 1272(a)(3)(B) is granted.

■ UII and NEICO seek summary judgment on the allegations in paragraph 23 of their complaint that the unsuitability decision is void because the Secretary failed to issue a decision and the reasons therefor within sixty days after the hearing as suggested by 30 U.S.C. § 1272(c). Section 1272(c) provides that "[w]ithin ten months after receipt of the petition the regulatory authority shall hold a public hearing ... Within sixty days after such hearing, the regulatory authority shall issue and furnish ... a written decision regarding the petition, and the reasons therefore." UII and NEICO interpret this as requiring that a decision must be rendered within twelve months of the date the complete petition is filed. Under this interpretation, the Alton decision including any statement of reasons should have been rendered no later than November 28, 1980. The decision and the statement of reasons were actually issued on December 16, 1980 and January 13, 1981, respectively.

This court cannot agree that § 1272(c) requires a decision to be made within twelve months. There is language in the legislative history which would indicate that at one point in the consideration of SMCRA Congress intended to impose a one year limit. S.Rep. No. 95–128 (1977) 95th Cong., S.Rep. No. 95–128 (1977) 95th Cong., 1st Sess. 54 (1977). Also, the Office of Surface Mining apparently believed that one year was the maximum time allowable for a decision. 44 Fed.Reg. 15,005 (Mar. 13, 1979); Letter from Walter N. Heine to Nicholas C. Yost, dated May 2, 1980 (Ad-

be decided after a full review of the administra- tive record.

min.Rec. No. 5PO2C1321); Memorandum to National Park Service (Admin.Rec., No. 5PO2C1057). However, the language finally adopted is not so limiting. To interpret the statute as requiring a decision to be issued within twelve months would be to reduce the amount of time the decision maker has to review and analyze relevant information received in hearings commenced at the end of the tenth month but extending into the eleventh or twelfth month to less than sixty days. Such a restriction could severely diminish the Secretary's ability to render a well reasoned opinion. In the opinion of the court the hearing may be held over as many days as, in the opinion of the decision maker, is necessary. Only after the hearing is closed does the sixty day period begin to run.

Hearings in the Alton proceedings were on September 29 and 30 and October 10 of 1980 but the hearing record was held open for ten days in order to receive additional public comments. Transcript of Public Hearing Oct. 10, 1982 (Admin.Rec. No. 5902K0713, 2); 45 Fed.Reg. 68762. In essence the hearing was closed on October 20, 1980. Thus, rendition of the decision on December 16, 1980 was within sixty days of the close of the hearings. Included in that decision were some basic reasons for the Secretary's decision and a statement that the decision would not become final until the statement of reasons was filed. Ostensibly, the Secretary could have changed his mind between the December 16th decision and the issuance of his statement of reasons. The detailed statement of reasons was issued January 13, 1981. It indicated that the decision did not become final until that date. Waiting until January 13, 1981 to render a final decision obviously exceeded the sixty day limitation of § 1272(c).[6]

The Federal defendants and Sierra Club defendants have made cross-motions to the effect that failure to comply with the sixty day limitation does not invalidate the decision. They argue that the limitation

should be interpreted as serving only as a guide for the conduct of orderly procedure rather than as a limitation on power. This court agrees. Despite the mandatory language "shall," it would be inappropriate to interpret this section as limiting the power of the Secretary to render a decision.

The legislative history indicates that in setting the time limits of § 1272(c) Congress was most interested in preventing administrative moratoria. See, S.Rep. No. 95–128, 95th Cong., 1st Sess. 94 (1977); S.Rep. No. 94–28, 94th Cong., 1st Sess. 219 (1975). "Statutes that, for guidance of a governmental official's discharge of duties, propose 'to secure order, system, and dispatch in proceedings' are usually construed as directory, whether or not worded in the imperative, especially when the alternative is harshness or absurdity." *Ralpho v. Bell*, 569 F.2d 607, 627 (D.C.Cir.1977). The Third Circuit when considering this same issue in the context of an Interstate Commerce Commission proceeding determined that the ICC's failure to comply with statutory deadlines did not require a dismissal of the case. The court gave three reasons for its ruling: (1) the statutory provision contained no express sanction for non-compliance, (2) the statutory purpose of eliminating delay was outweighed by other equally as important goals, and (3) the railroads failed to show that any undue prejudice resulted from the delay. *Baltimore and Ohio Chicago Terminal Railroad Co. v. United States*, 583 F.2d 678, 689–90 (3rd Cir.1978), *cert. denied*, 440 U.S. 968, 99 S.Ct. 1520, 59 L.Ed.2d 784 (1979). Likewise, SMCRA fails to provide any sanction for non-compliance. Furthermore, setting aside the Secretary's decision for lack of punctuality would result in the delay that Congress sought to avoid. Petitioners would have to refile their petition with the entire process then to begin anew. Such a result would be an absurd waste of resources particularly when UII and NEICO have failed to show that they were preju-

---

6. The EDF defendants also seek summary judgment on this issue only they argue that the Secretary complied with the time limitations.

This court, as is evident from the discussion above, does not agree.

884

diced by the delay. In the opinion of this court the sixty day limitation of § 1272(c) is directory rather than mandatory.

■ As previously discussed, section 1276(a)(1) of Title 30 requires any petition "for review of any action subject to judicial review ... [to] be filed in the appropriate court within 60 days from the date of such action ...." The Federal defendants are claiming that the claims and cross-claims of both the Sierra Club defendants and the EDF defendants were filed more than 60 days after the Alton decision was rendered and are therefore time barred. The Federal defendants seek summary judgment on this issue.

The Federal defendants' maintain that "[i]t is indisputable that Secretary Cecil S. Andrus rendered his *final decision* on the Alton petition on December 16, 1980." Memorandum in Support of Federal Defendants' Motion for Partial Summary Judgment 9 (emphasis added). This court cannot agree. On December 16, 1980 the Secretary rendered a preliminary decision in which he specifically stated that the decision would not become final until the date his statement of reasons was issued. *See,* Alton decision attached to Sierra Club defendants' complaint as Exhibit B at 2. In the statement of reasons the Secretary stated that the decision of December 16, 1980, became final upon the date the statement of reasons was signed and that any appeal from the decision had to be filed within 60 days from that date. *See,* Secretary's Statement of Reasons attached to Sierra Club defendants' complaint as Exhibit C at 52. The statement of reasons was signed and issued on January 13, 1981. The Federal defendants argue that the decision was final on December 16, 1980 but its effective date was delayed until January 13, 1981. The language employed by the Secretary does not support this position. The Secretary speaks only of when the decision would become final, not when it would become effective. The Secretary retained the option of further reviewing or changing his decision up until he made it final which was January 13, 1981. The claims and cross-

claims of the Sierra Club defendants, filed March 13, 1981, and the EDF defendants, filed March 11, 1981, were filed within 60 days after the final decision and thus are not time barred.

■ Federal defendants' also seek partial summary judgment on the basis that unsuitability determinations based upon provisions of the Act other than 30 U.S.C. § 1272(a)(2) are unreviewable because the statutes concerning discretionary authority under the Act are drawn in such broad terms that in a given case there is no law to apply. All of the opposing parties argue that there are other sources of legal authority other than SMCRA which provide a basis for reviewing the Alton decision. The Federal defendants agree that if the Alton decision is in violation of a specific legal requirement of any of these laws the decision is reviewable on that basis. The Federal defendants' argument addresses only the question of reviewability in terms of the factors set forth in section 1272(a)(3) of SMCRA. The source of this position is *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). UII and NEICO have moved for summary judgment to the effect that the decision is reviewable.

Commentators have criticized and courts have struggled with the "law to apply" test expressed in the *Overton Park* case and the results have been confusing. K. Davis, Administrative Law Treatise § 28.16 (Supp. 1982). Many courts have noted that "[t]here is a basic presumption of judicial review for one suffering legal wrong because of, or adversely affected or aggrieved by, agency action. [citations omitted]. The cited exception is a very narrow one." *Sabin v. Butz,* 515 F.2d 1061, 1065 (10th Cir. 1975). In the opinion of this court, decisions made pursuant to 30 U.S.C. § 1272(a)(3), as was the Alton decision, are subject to judicial review.

The "law to apply" test only requires that there exist standards to which a reviewing court can look in determining whether the agency's decision was either supported by substantial evidence or whether it was arbi-

trary and capricious, depending upon the applicable standard of review. For example, if a determination of unsuitability is made under 30 U.S.C. § 1272(a)(3)(B), there must be a finding that affected lands are fragile or historic and that surface mining operations would significantly damage the historical or fragile aspects of the land. A reviewing court does not weigh the competing considerations. The purview of the reviewing courts is to ascertain whether the Secretary considered these factors and whether the evidence presented supports the agency's findings. The standards contained in section 1272(a)(3) are sufficient to justify judicial review. Furthermore, it appears to have been Congress' intent that such decisions be subject to judicial review. *See,* 30 U.S.C. § 1276(a)(1) and (2).

The Federal defendants' reliance on *Greater New York Hospital Ass'n. v. Mathews,* 536 F.2d 494 (2nd Cir.1976) is misplaced. In that case Congress had authorized monthly payments to providers of Medicare services. However, Congress had also indicated that payments could be made on some basis other than monthly at such times "as the Secretary believes appropriate." Observing that this language "is as open-ended as it could conceivably be," *id.* at 497–98, the court held that new regulations prescribing less frequent timing of payments was unreviewable. Unlike this case, the Secretary of HEW in the *Mathews* case was not required to make any findings about certain facts. Had he been so required, then, in the opinion of this court, the decision would have been reviewable. Accordingly, the Federal defendants' motion for summary judgment on this issue is denied and UII's and NEICO's motion on this same issue is granted.

■ UII and NEICO argue in the next portion of their motion that § 1272(a) of SMCRA required the Secretary to establish a data base and inventory system before deciding the Alton decision and his failure to do so invalidates the decision. They go further to argue that even if this were not required, the failure to adopt such a system was arbitrary and capricious and an abuse

of discretion in the circumstances of the Alton proceedings. The EDF defendants have filed a cross-motion for summary judgment on this same issue.

There is nothing in SMCRA or its legislative history to support UII's and NEICO's position. The statutory language is clear that the asserted requirements apply only to programs concerning state lands. The basis for the distinction is evident: with respect to federal lands, the Secretary and his delegates are already obligated by law, and already have a fully developed practice of maintaining a full inventory of resources, uses and plans.

In support of their position that it was an abuse of discretion not to adopt a data base and inventory system UII and NEICO cite the following facts: (1) the Alton petition was the first unsuitability petition to be filed and decided under § 1272, (2) at the time the petition was filed, OSM had just adopted its permanent program regulations and had no administrative experience under § 1272, (3) the State of Utah did not have an approved state program and there was no state data base and inventory system in place, (4) OSM supposedly and prejudicially delayed commencement of their scientific study. UII and NEICO have failed to explain, and the court does not understand, how the mere existence of these facts renders the Secretary's decision not to establish a federal data base and inventory system arbitrary and capricious. UII's and NEICO's motion for summary judgment on this issue is denied and the EDF defendants' cross-motion is granted.

■ In a related portion of their motion for summary judgment, UII and NEICO argue that the Secretary should have awaited the adoption of a state plan as envisioned by 30 U.S.C. § 1272. The Federal defendants and the EDF defendants have also moved for summary judgment on this issue. The Federal defendants and EDF defendants go one step further and seek summary judgment to the effect that the Secretary also was not required to delay the unsuitability determination until a federal/state cooperative agreement was adopted.

UII and NEICO have failed to demonstrate how the absence of a cooperative agreement or a state plan has caused them any harm. It appears from reading their complaint that they are asserting these claims on behalf of the State of Utah. There is nothing to indicate that they have standing to do so. Indeed, the state has voluntarily dismissed similar claims contained in their complaint. Therefore, and on this issue, UII's and NEICO's motions are denied and the Federal defendants' and EDF defendants' are granted.

UII and NEICO's motion for summary judgment to the effect that they were denied a fair and meaningful opportunity to rebut the park visitor survey and the noise study is denied for the reasons stated in footnote 5.

■ The State of Utah filed a motion for summary judgment on the issue of access to the state owned lands which are isolated within the designated area. Subsequent to the filing of the motion, the Federal defendants and the State stipulated to Utah's right of access. Despite the stipulation, the court declines at this time to sign the proposed judgment submitted therewith. The unsuitability designation does not deny the State access to its land. Since this issue is really not in controversy in this case, it would be inappropriate to enter a judgment concerning it.[7]

Counsel for the Federal defendants is directed to prepare an appropriate order in accordance with this decision, agreed to as to form by all parties. The proposed form of judgment shall be submitted within thirty (30) days of the entry of this opinion.

---

**7.** The Sierra Club defendants also moved for summary judgment to the effect that 30 U.S.C. § 1272 is not unconstitutional on its face. The court understands that by stipulation of the parties this motion is to be decided at a later date.