**DRUMMOND COAL COMPANY, Plaintiff-Appellant, Cross-Appellee,**

v.

**James G. WATT, Defendant-Appellee, Cross-Appellant.**

**No. 83–7366.**

United States Court of Appeals, Eleventh Circuit.

July 2, 1984.

**470**

Fournier J. Gale, III, Birmingham, Ala., for plaintiff-appellant, cross-appellee.

Kathleen P. Dewey, Robert L. Klarquist, U.S. Dept. of Justice, Washington, D.C., Frank W. Donaldson, U.S. Atty., Herbert J. Lewis, III, Asst. U.S. Atty., Birmingham, Ala., Glenda Hudson, Div. of Surface Mining, Dept. of Interior, George R. Hyde, Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendant-appellee, cross-appellant.

Before RONEY and JOHNSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Drummond Coal Company ("Drummond") appeals the judgment of the United States District Court for the Northern District of Alabama, denying Drummond's petition for review and its complaint for injunctive and declaratory relief from regulations promulgated by the Secretary of the Interior ("the Secretary"), acting through the Office of Surface Mining Reclamation and Enforcement ("OSM"), pursuant to the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C.A. §§ 1201 et seq. ("the Act"). The regulations at issue govern the reclamation fund created under the Abandoned Mine Land Reclamation Program established by the Act. Specifically, the challenged regulation determines the method by which Drummond must calculate the fee it is required to pay into the fund on each ton of coal it produces.

The Secretary filed a cross-appeal, challenging the denial of his motion to dismiss the case for lack of jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(3).[1] The Secretary maintains that Section 526(a)(1) of the Act, 30 U.S.C.A. § 1276(a)(1), vests the United States District Court for the District of Columbia with exclusive jurisdiction to hear challenges to national regulations promulgated under the Act, and thus the district court here should have dismissed this case.

Although we believe that Drummond's challenge to the revised regulations is wholly without merit, we do not here reach that issue because we agree with the Secretary that Section 1276(a)(1) vests in the United States District Court for the District of Columbia exclusive jurisdiction over this case. Consequently, we reverse the district court's decision on the jurisdictional question, vacate its decision on the

---

**1.** The district court refused to certify the jurisdictional question for interlocutory appeal. The district court also denied the Secretary's motion to transfer the case to the United States District Court for the District of Columbia, pursuant to

28 U.S.C.A. § 1404, where Drummond concurrently had filed another action challenging the same regulation on the same grounds. On appeal, the Secretary does not challenge the denial of his motion to transfer the case.

merits, and remand the case with instructions to the district court to dismiss the action.

## I.

Congress in 1977 enacted the Surface Mining Control and Reclamation Act for the purpose of, among other things, establishing "a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations," 30 U.S.C.A. § 1202(a), and promoting "the reclamation of mined areas left without adequate reclamation ... which continue, in their unreclaimed condition, to substantially degrade the quality of the environment, prevent or damage the beneficial use of land or water resources, or endanger the health or safety of the public." 30 U.S.C.A. § 1202(h). Title IV of the Act created the Abandoned Mine Reclamation Fund, 30 U.S.C.A. § 1231, and enacted a requirement that all coal operators subject to the statute pay into the fund a reclamation fee on every ton of coal they produce, 30 U.S.C.A. § 1232.

On December 13, 1977, the Secretary first promulgated regulations governing the payment of the reclamation fee. 42 Fed.Reg. 62713 (codified at 30 C.F.R. Part 870 (1981)). These regulations, which were incorporated in the final regulations issued on October 25, 1978, 43 Fed.Reg. 49940, provided that the fee was "determined by the weight and value [of the coal] at the time of the initial bona fide sale, transfer of ownership, or use by the operator." 30 C.F.R. § 870.12(b) (1981). The regulations did not prescribe the elements that define the weight and value of the coal.

The Secretary later discovered that some coal operators in Alabama, before calculating their fees, were subtracting from the actual tonnage mined a deduction for the moisture content of the coal. The Secretary in June 1982 published revised regulations prohibiting such deductions. 47 Fed.Reg. 28593 (1982). The revised regulations stated that "[t]he weight of each ton shall be determined by the actual gross weight of the coal," 30 C.F.R. § 870.12(b)(3) (1983),[2] and specified that "[i]mpurities, including water, that have not been removed prior to the time of initial bona fide sale, transfer of ownership, or use by the operator shall not be deducted from the gross weight." 30 C.F.R. § 870.12(b)(3)(i) (1983).

In August 1982, Drummond filed this suit challenging 30 C.F.R. § 870.12 on the ground that it was arbitrary, capricious and inconsistent with the Act.[3] The Secretary in October 1982 moved the court to

---

**2.** The revised regulation provides in full:

§ 870.12 Reclamation fee.

(a) The operator shall pay a reclamation fee on each ton of coal produced for sale, transfer, or use, including the products of in situ mining.

(b) The fee shall be determined by the weight and value at the time of initial bona fide sale, transfer of ownership, or use by the operator.

(1) The initial bona fide sale, transfer of ownership, or use shall be determined by the first transaction or use of the coal by the operator immediately after it is severed, or removed from a reclaimed coal refuse deposit.

(2) The value of the coal shall be determined F.O.B. mine.

(3) The weight of each ton shall be determined by the actual gross weight of the coal.

(i) Impurities, including water, that *have not* been removed prior to the time of initial bona fide sale, transfer of ownership, or use by the operator *shall not* be deducted from the gross weight.

(ii) Operators selling coal on a clean coal basis shall retain records that show run-of-mine tonnage, and the basis for the clean coal transaction.

(iii) Insufficient records shall subject the operator to fees based on raw tonnage data.

(c) If the operator combines surface mined coal, including reclaimed coal, with underground mined coal before the coal is weighed for fee purposes, the higher reclamation fee shall apply, unless the operator can substantiate the amount of coal produced by surface mining by acceptable engineering calculations or other reports which the Director may require.

30 C.F.R. § 870.12 (1983).

**3.** Drummond at the same time filed an action in the United States District Court for the District of Columbia. *See* n. 1 *supra.* On February 24, 1983, the district court in the District of Columbia entered an order suspending proceedings in that action until all proceedings, including appeals, in this case are completed.

dismiss the case for lack of jurisdiction, arguing that Section 1276(a)(1) conferred exclusive jurisdiction to hear challenges to national regulations on the federal district court for the District of Columbia. The district court denied the motion in January 1983, concluding that the Act provided the District of Columbia district court with concurrent jurisdiction in cases involving national regulations. In May 1983, the district court entered judgment for the Secretary on the merits of Drummond's challenge, concluding that the regulations promulgated by the Secretary were valid and not arbitrary or capricious. Drummond filed its notice of appeal, and the Secretary cross-appealed from the May judgment and the January order insofar as they determined that the United States District Court for the Northern District of Alabama had jurisdiction to hear challenges to national regulations promulgated under the Act.

## II.

We address first the jurisdictional question raised by the Secretary. The statutory provision governing jurisdiction, 30 U.S.C.A. § 1276(a)(1), states that:

Any action of the Secretary to approve or disapprove a State program or to prepare or promulgate a Federal Program pursuant to this chapter shall be subject to judicial review by the United States District Court for the District which includes the capital of the State whose program is at issue. *Any action by the Secretary promulgating national rules or regulations* including standards pursuant to sections 1251, 1265, 1266, and 1273 of this title *shall be subject to judicial review in the United States District Court for the District of Columbia Circuit.* Any other action constituting rulemaking by the Secretary shall be subject to judicial review only by the United States District Court for the District in which the surface coal mining operation is located. Any action subject to judicial review under this subsection shall be af-

firmed unless the court concludes that such action is arbitrary, capricious, or otherwise inconsistent with the law. A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action, or after such date if the petition is based solely on grounds arising after the sixtieth day. Any such petition may be made by any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary.

*Id.* (emphasis added).

The Secretary maintains that the plain language of the statute reveals Congress' intent to vest exclusive jurisdiction over challenges to national regulations in the District Court for the District of Columbia. In addition, the Secretary contends that the legislative history and purpose of the Act, as well as case law interpreting this statute and others and a survey of jurisdictional statutes, support the Secretary's conclusion. Drummond argues that the language of the statute and its legislative history support the conclusion reached by the court below that the statute confers concurrent jurisdiction on the District of Columbia district court and all other district courts that otherwise would have jurisdiction of the case.

Only two other circuits have addressed this question, and they have not agreed on the answer. In *Holmes Limestone Co. v. Andrus*, 655 F.2d 732 (6th Cir.1981), *cert. denied sub nom. Watt v. Homes Limestone Co.*, 456 U.S. 995, 102 S.Ct. 2280, 72 L.Ed.2d 1292 (1982), the Court reversed the district court's determination that the statute vested exclusive jurisdiction in the District of Columbia district court. *Id.* at 733. The Fourth Circuit, in *Tug Valley Recovery Center v. Watt*, 703 F.2d 796 (1983), without citing *Holmes Limestone* and with little discussion, disagreed.[4] *Id.* at 799 n. 3.

---

**4.** District courts also have decided the question both ways. Concluding that the statute confers

exclusive jurisdiction are: *Virginia Mining & Reclamation Ass'n v. Watt*, No. 82–2799 (D.D.C.

"It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the Act is framed." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). If the language is plain and does not lead "to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent." *Id.* at 490, 37 S.Ct. at 196. When the "legislative purpose is expressed in 'plain and unambiguous language, ... the ... duty of the courts is to give it effect according to its terms'." *United States v. Rutherford*, 442 U.S. 544, 551, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979) (quoting *United States v. Lexington Mill & Elevator Company*, 232 U.S. 399, 409, 34 S.Ct. 337, 340, 58 L.Ed. 658 (1914)).

Section 1276(a)(1) states that national regulations "shall be subject to judicial review in the United States District Court for the District of Columbia Circuit."[5] The language that Congress chose for this provision indicates its intent. The word "shall" is a mandatory, not permissive, form[6] and indicates a congressional intent to require that judicial review of regulations having nationwide application occur in the federal district court in the District of Columbia. This result is neither absurd nor wholly impracticable. A rational basis can be conceived for centralizing review of national regulations. Congress may have had a particular desire to foster uniformity in the interpretation of these regulations.[7] Congress' provision in other statutes of a single avenue for judicial review[8] and its subsequent enactment of this statute suggest that limiting review to one court is not impracticable.

Even if we were not to rely on the plain meaning of the statute, we would reach the conclusion that we do on the basis of the Act's legislative history and purpose, applicable case law, and Congress' treatment of other jurisdictional statutes. In so doing, we explicitly reject the reasoning and conclusions reached by the district court in this case and by the Sixth Circuit in *Holmes Limestone*.

The court below compared the Senate and House versions of the bill considered by the Conference Committee with the bill that emerged from Conference. The court noted that the House and Senate bills both

June 8, 1983) (unpublished opinion); *Reading Anthracite v. Office of Surface Mining Reclamation and Enforcement*, No. 80–0667 (E.D.Pa. October 8, 1980) (unpublished opinion); *Union Carbide Corp. v. Andrus*, 13 E.R.C. 1481 (S.D.W. Va.1979). Concluding that the statute confers concurrent jurisdiction is: *Utah International, Inc. v. Department of the Interior*, 553 F.Supp. 872 (D.Utah 1982).

5. No party challenges here the assertion that the regulation under review is a national regulation.

6. The word "shall" has been defined as follows:
   *Shall.* As used in statutes, contracts, or the like, this word is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, the term "shall" is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation. It has a peremptory meaning, and it is generally imperative or mandatory. It has the invariable significance of excluding the idea of discretion, and has the significance of operating to impose a duty which may be enforced, particularly if public policy is in favor of this meaning, or when addressed to public officials, or where a public interest is involved, or where the public or persons have rights which ought to be exercised or enforced, unless a contrary intent appears. *People v. O'Rourke*, 124 Cal.App. 752, 13 P.2d 989, 992.
   But it may be construed as merely permissive or directory (as equivalent to "may"), to carry out the legislative intention and in cases where no right or benefit to any one depends on its being taken in the imperative sense, and where no public or private right is impaired by its interpretation in the other sense. *Wisdom v. Board of Sup'rs of Polk County*, 236 Iowa 669, 19 N.W.2d 602, 607, 608.
   Black's Law Dictionary 1233 (rev. 5th ed. 1979).

7. *See* text accompanying nn. 11 & 12 *infra*.

8. *See, e.g.*, 42 U.S.C.A. § 1973c (Voting Rights Act) (certain states seeking to impose new voter qualifications may institute an action in the United States District Court for the District of Columbia); 42 U.S.C.A. § 7607 (Clean Air Act) (certain regulations subject to review only in the United States Court of Appeals for the District of Columbia); 47 U.S.C.A. § 402(b) (Federal Communications Act) (certain orders of the FCC may be reviewed by the United States Court of Appeals for the District of Columbia).

provided that review of national regulations would occur *only* in the Court of Appeals for the District of Columbia, that review of actions by the Secretary to approve or disapprove a state program would occur *only* in the federal court of appeals for the circuit that contains the state whose program is at issue, and finally that review of any other action by the Secretary would occur *only* in the district court (House bill) or court of appeals (Senate bill) for the district in which the mining operation at issue is located. The district court noted that the bill that emerged from Conference omitted the word "only" in the sentences regarding the review of national regulations and state programs but retained the word in the sentence providing for the review of other actions by the Secretary. (It also changed the court in which review would occur from the circuit to the district.) The court concluded that the omission of the word "only" from the sentence providing for review of national regulations was purposeful and indicated Congress' intent to create concurrent jurisdiction. The court found this conclusion bolstered by the retention of "only" in the sentence involving other actions by the Secretary. The majority in *Holmes Limestone, supra,* adopted essentially the same reasoning. 655 F.2d at 737.[9]

■ We cannot agree. The Conference Committee Report did not explain the reason, if any existed, for omitting the word "only" from the Conference bill. H.R.Rep. No. 95–493, p. 111 (1977), *reprinted in* 1977 U.S.Code Cong. & Ad.News 728, 743. Unexplained changes made in committee are not reliable indicators of congressional intent. *See Trailmobile Company v. Whirls,* 331 U.S. 40, 61, 67 S.Ct. 982, 992, 91 L.Ed. 1328 (1947). Although the omission may represent an intention to vest concurrent jurisdiction, as the government notes, it may represent instead a congressional recognition of the force of the word "shall" and an intention to avoid redundancy. Alternatively, as Justice White suggested in his dissent from the denial of certiorari in *Holmes Limestone,* the omission may have been completely inadvertent. 456 U.S. 995, 996, 102 S.Ct. 2280, 2281, 72 L.Ed.2d 1292 (1982) (White, J., with Blackmun, J., dissenting).[10]

Legislative history reveals the purposes behind the Act and supports our conclusion. In enacting the Surface Mining Control and Reclamation Act, Congress sought to establish uniform national standards for the surface mining of coal and reclamation of lands damaged by past mining practices. Congress expressly found that uniform federal standards were essential "to insure that competition in interstate commerce among sellers of coal produced in different States will not be used to undermine the ability of the several States to improve and maintain adequate standards ...." 30 U.S.C.A. § 1201(g). "The [House and Senate] Committees also explained that inadequacies in existing state laws and the need for uniform minimum nationwide standards made federal regulations imperative." *Hodel v. Virginia Surface Mining & Reclamation Association,* 452 U.S. 264, 280, 101 S.Ct. 2352, 2362, 69 L.Ed.2d 1 (1981) (citing S.Rep. No. 95–128, at 49; H.R.Rep. No. 95–218, at 58, *reprinted in* 1977 U.S.Code

---

**9.** In a separate opinion, Judge Merritt rejected the reasoning of the majority, but concurred in the result. *See Holmes Limestone Co. v. Andrus,* 655 F.2d 732, 739–41 (6th Cir.1981) (Merritt, J., concurring), *cert. denied sub nom. Watt v. Holmes Limestone Co.,* 456 U.S. 995, 102 S.Ct. 2280, 72 L.Ed.2d 1292 (1982). Judge Merritt concluded that the language of Section 1276(a)(1) is unclear and the legislative history inconclusive on the matter of congressional intent.

**10.** In support of its argument that the omission was intentional, Drummond suggests that without the explicit provision for judicial review in the District of Columbia district court, that court might not have venue over an action challenging national regulations promulgated under the Act, and thus inclusion of the provision merely indicates Congress' intention to ensure that the D.C. court would have venue. The government correctly points out that under 28 U.S.C.A. § 1391(e)(1), except as otherwise provided by law, actions to review federal administrative decisions properly lie in the United States District Court for the District of Columbia.

Cong. & Ad.News 593, 596). Although Congress also intended to provide the flexibility required by the widely differing local conditions under which mining occurs throughout the country,[11] its concern for minimum national standards applicable to all is abundantly clear in the legislative history. A provision establishing one forum in which judicial review of nationally applicable regulations must occur is entirely consistent with this expressed concern.[12] It was on this basis that the Fourth Circuit in *Tug Valley, supra,* determined that jurisdiction to review national regulations promulgated under the Act was vested exclusively in the United States District Court for the District of Columbia. 703 F.2d at 799 n. 3.

Our reading of the statute is further supported by the case law interpreting other jurisdictional statutes. "It is well settled that if Congress, as here, specifically designates a forum for judicial review of administrative action, that forum is exclusive. And this result does not depend on Congress using the word 'exclusive' in the statute providing for a forum for judicial review." *Gardner v. Alabama,* 385 F.2d 804, 810 (5th Cir.1967), *cert. denied,* 389 U.S. 1046, 88 S.Ct. 773, 19 L.Ed.2d 839 (1968) (construing Civil Rights Act of 1964 and Social Security Act) (citations omitted) (citing *Whitney National Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965)).[13] *See also Denberg v. United States Railroad Retirement Board,* 696 F.2d 1193, 1195 (7th Cir.1983) (construing Railroad Retirement Act of 1974) ("if there is a special statutory review proceeding, it is exclusive"); *Aminoil U.S.A., Inc. v. California State Water Resources Control Board,* 674 F.2d 1227, 1235 (9th Cir.1982) (construing Clean Water Act) ("when interpreting a [detailed regulatory] statute ..., the remedies provided are presumed to be exclusive absent clear contrary evidence of legislative intent"); *City of Rochester v. Bond,* 603 F.2d 927, 935 (D.C.Cir.1979) (construing the Federal Aviation Act of 1958 and the Federal Communications Act) (" 'even where Congress has not expressly conferred exclusive jurisdiction, a special review statute vesting jurisdiction in a particular court cuts off other courts' original jurisdiction in all cases covered by the special statute' ") (quoting *Investment Company Institute v. Board of Governors of the Federal Reserve System,* 551 F.2d 1270, 1279 (D.C.Cir.1977)).

Finally, we note that when Congress has intended to provide litigants with a choice

---

**11.** *See* 30 U.S.C.A. § 1201(f) ("because of the diversity in terrain, climate, biologic, chemical, and other physical conditions in areas subject to mining operations, the primary governmental responsibility for developing, authorizing, issuing, and enforcing regulations for surface mining and reclamation operations subject to this Act should rest with the States"); 30 U.S.C.A. § 1202(g) (a purpose of the Act is to "assist the States in developing and implementing a program to achieve the purposes of this Act"); 30 U.S.C.A. § 1253 ("Each State in which there are or may be conducted surface coal mining operations on non-Federal lands, and which wishes to assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations ... shall submit to the Secretary ... a State program which demonstrates that such State has the capability of carrying out the provisions of this Act"); 30 U.S.C.A. § 1255 (State laws are not preempted by the Act unless inconsistent with it).

**12.** Justice White adverted to another congressional purpose that supports the conclusion we reach here.

... § 526(a)(1) provides that regulations with a national impact be reviewed in the District of Columbia, those with a statewide impact in the district court for the district of the capital of the State involved, and all other regulations only in the district where the surface mining *operation at issue is located.* By allowing a national regulation to be challenged in federal courts other than those in the District of Columbia, the Court of Appeals here arguably frustrated Congress' carefully devised plan for judicial review.

*Watt v. Holmes Limestone Co.,* 456 U.S. 995, 996, 102 S.Ct. 2280, 2281, 72 L.Ed.2d 1292 (1982) (White, J., with Blackmun, J., dissenting from denial of certiorari).

**13.** The Eleventh Circuit Court of Appeals has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent, which is binding unless and until overruled or modified by this Court en banc. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

of fora, it has done so expressly. *See, e.g.,* 12 U.S.C.A. § 1818(i)(2)(iv) (FDIC Act) (agency action may be reviewed in the United States Court of Appeals for the circuit in which the home office of the insured bank is located or in the United States Court of Appeals for the District of Columbia Circuit); 12 U.S.C.A. § 1848 (Bank Holding Company Act of 1956) (Federal Reserve Board action may be reviewed in the United States Court of Appeals within any circuit wherein the aggrieved party has its principal place of business or in the Court of Appeals for the District of Columbia); 29 U.S.C.A. § 660(a) (Occupational Safety and Health Act of 1970) (OSHA Review Commission order may be reviewed in any United States Court of Appeals for the circuit in which a violation of the statute is alleged to have occurred or where the employer has its principal office or in the Court of Appeals for the District of Columbia); 49 U.S.C.A. § 1486(a) (Federal Aviation Act of 1958) (agency action may be reviewed by the courts of appeals of the United States or the United States Court of Appeals for the District of Columbia). The counter-argument that if Congress intended to confer exclusive jurisdiction it could do so expressly has already been rejected by the cases previously cited, which hold that explicit designation of a forum implies exclusive jurisdiction in that forum.

Thus, we conclude from the language of the statute, the legislative history and purpose of the statute, as well as from case law and other jurisdictional statutes, that Section 526(a)(1) of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C.A. § 1276(a)(1), confers exclusive jurisdiction on the United States District Court for the District of Columbia to hear challenges to national regulations promulgated under the Act.

### III.

For the foregoing reasons, we REVERSE the district court's decision on its jurisdiction under 30 U.S.C.A. § 1276(a)(1), VACATE its decision on the merits of Drummond's challenge to the revised regulations, and REMAND the case with instructions to dismiss the action.