**DARTY DEVELOPMENT COMPANY, INC., Plaintiff,**

v.

**OFFICE OF SURFACE MINING RECLAMATION AND ENFORCEMENT; United States Department of Interior; Donald Hodel, Secretary of Interior; and Edwin Meese, Attorney General of the United States, Defendants.**

Civ. A. No. 85–C–0566–J.

United States District Court,
N.D. Alabama,
Jasper Division.

April 15, 1986.

Edward R. Jackson, Tweedy, Jackson & Beech, Jasper, Ala., for plaintiff.

Charles Gault, Sp. Asst. U.S. Atty., Office of Field Sol., Knoxville, Tenn., for defendants.

## MEMORANDUM OF OPINION

CLEMON, District Judge.

In this action under the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201 *et seq.* ("the Act"), plaintiff Darty Development Company, Inc. ("Darty") contends that the Secretary of the Interior, ("the Secretary") acting through the Office of Surface Mining Reclamation and Enforcement ("OSM") has improperly suspended its mining operations in Carbon Hill, Alabama. Darty initially moved for temporary injunctive relief; but because this complaint is to be heard "solely on the record made before the Secretary," 30 U.S.C. § 1276(b), and that record has been filed and received in evidence, the Court has advanced the trial of the cause and consolidated it with preliminary hearing. Based on its review of the record, the Court concludes that the decision of Secretary is supported by substantial evidence on the record as a whole, and it is affirmed.

I.

Roughly four years ago, Darty purchased certain unreclaimed coal lands in the City of Carbon Hill (Walker County), Alabama. The property had previously been the situs of one or more underground coal mines, and the coal deposits remaining on the land are apparently substantial. In December, 1985, Darty and the City of Carbon Hill ("the City") worked out an arrangement under which Darty leased the land to the City for a ten-year period, "for the purpose of construction, development, and use as a recreational facility." The annual rent is to be $1,000.00. The City then contracted with Darty to undertake and complete the construction work for a price of $42,500, to be paid upon the completion of the construction. By separate agreement, Darty was to donate $42,500 to the City *and* $1,000 a month during the period of the lease.

With these arrangements in hand, the City's attorney contacted the Alabama Surface Mining Commission ("ASMC") and sought an exemption from the requirement of a mining permit. "Realizing that Office of Surface Mining oversight responsibilities could result in Federal enforcement action," ASMC requested that OSM determine the eligibility of the project for the "government-financed" exemption. OSM responded that if all applicable criteria were met, the exemption could be granted.

On November 20, 1985, ASMC granted the exemption, with the proviso that

This approval shall become null and void upon violation or failure to meet any of the following conditions:

1. Coal extraction and any disturbance resulting therefrom, shall be limited to the area upon which government-financed construction is conducted.

. . . .

Thereafter, Darty commenced mining operations on the property in the City. On March 4, 1986, as a result of a federal document inspection, the Secretary determined and notified ASMC that the exemption had been improperly granted to Darty since the funding for the project was to be provided by Darty, rather than the City. ASMC was given ten days to obtain compliance with the applicable law and regulations. When it failed to do so, the Secretary issued a Cessation Order, effective March 17, 1986.

Darty appealed the Cessation Order, and an administrative law judge ("ALJ") conducted a hearing. Based on the hearing, the ALJ found that

The proof in this case is conclusive that the City of Carbon Hill hasn't appropriated a dime for this project. That they don't even appropriate money except as they go along, when they have to spend it, and they haven't appropriated anything. They have not paid the contractor anything, don't intend to pay him until the project is completed. Now, along with that the contractor is giving the City fifty cents a ton to mine coal.

[I]t's nothing more than a thinly veiled but unsuccessful attempt to try to make this into a government financed project. There is no government financing involved and from a practical matter [sic] the City is trying to sell its name to the project for fifty cents a ton to avoid the enforcement of the strip mining law. . . . The criteria set by the Alabama regulations have not been met. . . .

## II.

In an effort to "strike a balance between the protection of the environment and agricultural productivity and the Nation's need for coal as an essential source of energy," 30 U.S.C. § 1202(f), Congress enacted the Surface Mining Control and Reclamation Act of 1977. Under the Act, the Office of Surface Mining Reclamation and Enforcement is established in the Department of the Interior. OSM administers the programs for controlling surface coal mining operations, reviews and approves or disapproves State programs for controlling surface mining operations and reclaiming abandoned mined lands, and, *inter alia,* makes investigations and inspections necessary to insure compliance with the Act. 30 U.S.C. § 1211(c). It is also empowered to issue cease and desist orders, and to order the suspension, revocation, or withholding of any permit for non-compliance with the Act or any regulations adopted pursuant to the Act.

In the Act, Congress declares that "the primary governmental responsibility for developing, authorizing, issuing, and enforcing regulations for surface mining and reclamation operations ... should rest with the States...." 30 U.S.C. § 1201(f). When a State regulatory program is approved by OSM, then the State assumes "primacy" status. The State is henceforth given exclusive jurisdiction over the regulation of surface coal mining and reclamation operations, with three exceptions, and it is charged with primary enforcement responsibility, with oversight duties remaining with OSM. 30 U.S.C. § 1253 ff. However, even in a state with primacy status, OSM

retains the right to make inspections and to issue cessation orders where it finds that mining operations are inimical to the public health or safety or that they pose actual or threatened significant, imminent harm to the environment.[1]

Under regulations duly adopted by OSM, the validity of which may not be challenged in this forum,[2] Surface coal mining and reclamation operations conducted without a valid surface coal mining permit constitute a condition or practice which causes or can reasonably be expected to cause significant, imminent environmental harm to land, air or water resources.... 30 C.F.R. § 843.11(a)(2) (1985). It follows that whenever a surface mining operation is undertaken without a permit[3] issued by the state regulatory agency, the Secretary is empowered to issue a cessation order.

The Alabama Surface Mining Commission is the duly OSM-approved regulatory agency for surface mining operations in the State of Alabama. Under substantive Alabama law and ASMC, a permit is not required where the coal mining operation is "an incidental part of federal, state or local government-financed highway or other construction...." § 9–16–99(3) *Code of Alabama of 1975*, as amended 1981; ASMC Rule 880–X–2D–.04.

The parallel federal regulation provides that "[c]oal extraction which is an incidental part of government-financed construction is exempt from the Act...." 30 C.F.R. § 707.11(a) (1985). It defines "government-financed construction" as

... construction funded 50 percent or more by funds appropriated from a government financing agency's budget or obtained from general revenue bonds, but shall not mean government financing agency guarantees, insurance, loans, funds obtained through industrial revenue bonds or their equivalent, or in-kind payments.

30 C.F.R. § 707.5 (1985). Although the ASMC's regulatory definition of "government-financed highway or other construction" was not presented to the Court, the parties have assured that the state definition is substantially identical to the federal.

### III.

Under the law and the facts, more than substantial evidence abounds in the record as a whole to support the Secretary's cessation order. There is no "government financed construction," for as the ALJ found, "the City of Carbon Hill hasn't appropriated a dime for this project." That simple but crucial fact is undisputed.

The exemption granted to Darty, by its terms, became null and void when the City of Carbon Hill failed to appropriate, from its budget, fifty-percent or more of the construction costs. Darty commenced the mining operations without a permit and without complying with the terms of the ASMC exemption. The Secretary was well within the scope of authority granted to him under the Act when he issued the cessation order.

---

1. The applicable federal statute provides:
   When, on the basis of any Federal inspection, the Secretary or his authorized representative determines that any condition, practice, or violation also creates an imminent danger to the health or safety of the public, or is causing, or can reasonably be expected to cause significant, imminent environmental harm to land, air, or water resources, the Secretary or his authorized representative shall immediately order a cessation of surface coal mining and reclamation operations.... Such cessation order shall remain in effect until the Secretary, or his authorized representative, determines that the condition, practice, or violation has been abated....

30 U.S.C. § 1271(a)(2). The constitutionality of this provision has been upheld by the Supreme Court in *Hodel v. Virginia Surface Mining & Reclamation Association*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981).

2. *Drummond Coal Co. v. Watt*, 735 F.2d 469 (11th Cir.1984).

3. Obtaining a permit is an expensive undertaking. The application consists largely of engineering plans, studies, and determinations. A blasting plan and general liability insurance must be provided; and a reclamation plan and a bond to secure compliance with the reclamation plan are required. 30 U.S.C. § 1257(b), (d), (f), (g); §§ 1258, 1259.

By separate order, judgment shall be entered in favor of the defendants and against the plaintiff.