[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-17083

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**March 1, 2007**
**THOMAS K. KAHN**
**CLERK**

D.C. Docket No. 04-00079-CV-MP-AK

FEDERAL ELECTION COMMISSION,

                                                            Plaintiff-Appellee,

                              versus

REFORM PARTY OF THE UNITED STATES OF AMERICA,

                                                            Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(March 1, 2007)**

Before ANDERSON and MARCUS, Circuit Judges, and ALTONAGA,[*] District
Judge.

PER CURIAM.

_____

[*] Honorable Cecilia M. Altonaga, United States District Judge for the Southern District of
Florida, sitting by designation.

The Reform Party of the United States ("the RPUSA") appeals the district court's grant of summary judgment in favor of the Federal Election Commission ("the Commission"), and its entry of an injunction limiting the manner in which the RPUSA may spend its money pending satisfaction of its repayment obligation. The Commission filed suit against the RPUSA, and its treasurers William D. Chapman, Sr. ("Chapman") and Lee Dilworth ("Dilworth"), and the Reform Party 2000 Convention Committee ("Convention Committee") and its treasurer, Gerald M. Moan ("Moan"), pursuant to 26 U.S.C. § 9010(b). In its suit, the Commission sought the recovery of $333,558.00 in public funds previously determined by the Secretary of the Treasury to be owed by the RPUSA pursuant to 26 U.S.C. § 9007, as well as injunctive and declaratory relief. The RPUSA and the other named Defendants presented several defenses, filed a counterclaim against the Commission, and filed cross-claims against Defendant Chapman and the Convention Committee.

The RPUSA argues that summary judgment was improperly granted because (1) the district court erroneously found it did not have jurisdiction to hear the RPUSA's defenses and claims against the Commission; (2) the RPUSA was denied discovery; and (3) the injunction violates the RPUSA's first amendment right to free speech. We conclude that the court correctly determined it lacked

2

jurisdiction to entertain the defenses and counterclaim, and that the RPUSA was not improperly denied discovery. We do not reach the merits of the first amendment challenge to the injunctive portion of the order. Accordingly, we AFFIRM.[1]

## I. BACKGROUND

The Commission is an independent agency with exclusive jurisdiction to administer, interpret, and civilly enforce the Federal Election Campaign Act of 1971, as amended ("FECA"), 2 U.S.C. §§ 431-455, and the Presidential Election Campaign Fund Act ("Fund Act"), 26 U.S.C. §§ 9001-9013. The Commission administers federal funding for presidential nominating conventions. *See Freedom Republicans v. FEC*, 13 F.3d 412, 414 (D.C. Cir. 1994).

In November 1997, the RPUSA registered with the Commission as the national committee of the Reform Party, and in the 2000 election cycle was a minor party within the meaning of 26 U.S.C. § 9002(7). Dilworth was the treasurer of the RPUSA at the time of the amended complaint, and Chapman was the RPUSA's treasurer at the time the litigation began. The treasurers are

---

[1] On January 10, 2007, Jeffrey McCloskey, appearing *pro se*, filed a Motion for Leave to File Brief Out of Time of Amicus Curiae in Support of Reversal and in Support of Appellant's Reply to Brief of the Federal Election Commission. Because this was received with insufficient time for Appellee to respond, the Motion is DENIED.

responsible for accepting all receipts and authorizing disbursements on behalf of the RPUSA as well as keeping records of the RPUSA's receipts and disbursements and filing required reports with the Commission for public disclosure. *See* 2 U.S.C. §§ 432, 433 and 434.

The Convention Committee is a subordinate committee of the RPUSA, established by the RPUSA for the purpose of acting on its behalf in receiving public funds to finance the RPUSA's 2000 presidential nominating convention and using those funds to conduct the convention. *See* 11 C.F.R. § 9008.3(a)(2). Moan is the treasurer of the Convention Committee.

The Fund Act authorizes national party committees of eligible major and minor parties[2] to receive public funds from the Presidential Election Campaign Fund in order to defray certain expenses incurred in a presidential nominating convention. *See* 26 U.S.C. § 9008. Pursuant to 11 C.F.R. § 9008.3(a), to qualify for entitlement to payments from the Presidential Election Campaign Fund, the national committee of a party must establish a convention committee and file an application statement, and both the national committee and the convention

---

[2] National committees of minor parties are entitled to receive payments that, in the aggregate, do not exceed an amount which bears the same ratio to the amount which the national committee of a major party is entitled to receive as the number of popular votes received in the preceding presidential election by that minor party's presidential candidate compared to the average number of popular votes received in the preceding presidential election by all of the major party presidential candidates. 11 C.F.R. § 9008.4(b).

committee must file an agreement agreeing to certain enumerated conditions. *See* 11 C.F.R. § 9008.3(a)(4)(i)-(iv).

On September 10, 1999, the National Committee of the RPUSA submitted an application for public presidential nominating convention funding, agreeing to the required conditions, and establishing the Convention Committee as the committee responsible for conducting the day to day arrangements and operations for its 2000 presidential nominating convention. The chair of the Convention Committee was selected and identified. The RPUSA, *via* its National and Convention Committees, agreed to "an audit and examination pursuant to 26 U.S.C. 9008(g) and 11 C.F.R. 9008.11 of all convention expenses," to assume the "burden of proving that disbursements by the convention committee were for purposes of defraying convention expenses," and, after the audit, to "pay any amount required to be paid under 26 U.S.C. 9008 (h) and 11 C.F.R. 9008.12." (R1-61 at Ex. 5). In reliance on the promises made by the RPUSA and the RPUSA's compliance with statutory requirements for the receipt of such funds, the Commission certified to the Secretary of the Treasury that the RPUSA was entitled to payments. The Convention Committee of the RPUSA eventually received $2,522,690.00.

After the 2000 Reform Party USA presidential nominating convention,

5

which ended on August 13, 2000, and pursuant to the Fund Act, 26 U.S.C. § 9008(g), the Commission conducted an audit of the Convention Committee. The audit revealed certain expenditures that either were not permissible uses of public funds under section 9008(c), or were inadequately documented, including a $300,000 payment to a company called The Performance Group. The Commission determined that the RPUSA was obligated to repay $333,558, which consisted of the payment to The Performance Group plus additional non-convention related expenses.

On September 30, 2002, the Commission notified the Convention Committee of the Commission's repayment determination, and provided it with a copy of the Final Audit Report.[3] On November 26, 2002, the RPUSA submitted a timely request for administrative review of the repayment determination, and on October 8, 2003, the Commission issued its decision on the request for administrative review, finding that the RPUSA was required to repay the $333,558 to the United States Treasury, and issuing with the decision a detailed Statement of Reasons. By correspondence dated October 14, 2003, the Commission notified the RPUSA and the Convention Committee of its Post-Administrative Review

---

[3] Notice to the Convention Committee defeats an additional argument the RPUSA presents on appeal, namely that its due process rights were violated by a lack of notice of the Commission proceedings. See 11 C.F.R. § 9008.3(a).

Repayment Determination, and gave each a copy of the Statement of Reasons. A subsequent petition for rehearing was denied by the Commission as untimely, and on March 29, 2004, Shawn O'Hara, national chairman of the RPUSA, filed a petition for review in the United States Court of Appeals for the District of Columbia Circuit.

The D.C. Circuit dismissed that petition as untimely on March 31, 2004. Thereafter, the Commission filed this suit, seeking repayment of the $333,558. The RPUSA asserted several defenses, among them that it was the Convention Committee that had received payments from the Commission, not the National Committee, and that under 26 U.S.C. § 9008(h), the Commission can only require repayments from the National Committee. The RPUSA brought a counterclaim pursuant to 26 U.S.C. § 9011(b) and the mentioned cross-claims, seeking declaratory relief and damages on the basis that the Convention Committee is liable to the RPUSA, and that the Commission had acted upon false and fraudulent reports and engaged in misconduct against the RPUSA.

The Commission's motion for summary judgment was filed on April 25, 2005. Several months later, the RPUSA sought discovery and the Commission responded with a motion to stay discovery pending a ruling on the summary judgment motion. The motion to stay discovery was denied as moot given the

7

resolution of the summary judgment motion.

The district court granted summary judgment, finding that once the D.C. Circuit rejected the petition for review as untimely, the RPUSA was foreclosed from raising claims or defenses that had not been properly presented before the D.C. Circuit. Persuaded that the D.C. Circuit is the only venue in which repayment determinations made by the Commission may be challenged, *see* 26 U.S.C. § 9011(a), and because no such challenge was properly presented, the district court declared that the Commission was entitled to recovery of the $333,558. In ordering repayment, the district court also included language that enjoined the RPUSA "from diverting any of its assets to any other expenditures other than payment of federal taxes until it completes its repayment obligation."

The district court ordered that the Clerk enter judgment for the Commission. This was done on November 23, 2005, and the case was closed.

## II. STANDARD OF REVIEW

The district court's opinion is not a final decision within the meaning of 28 U.S.C. § 1291, because it did not adjudicate or address the cross-claims.[4] However, because the order under consideration enjoins the RPUSA from diverting any of its

---

[4] Furthermore, while the lower court's order references a pending motion to dismiss Defendants' counterclaims, it does not directly dispose of that motion.

8

assets to any expenditures other than payment of federal taxes until it completes its repayment obligation, the opinion is justiciable pursuant to 28 U.S.C. § 1292(a)(1), and the parties acknowledge the Court's jurisdiction.

We review the district court's grant of summary judgment *de novo*, considering the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party, in this case the RPUSA. Fed. R. Civ. P. 56(c); *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004). The decision to grant or deny an injunction is reviewed for clear abuse of discretion, but underlying questions of law are reviewed *de novo*. *See United States v. Gilbert*, 244 F.3d 888, 908 (11th Cir. 2001).

## III. DISCUSSION

The first issue to address is whether the district court was correct in concluding that it lacked jurisdiction to entertain the RPUSA's defenses and counterclaim. That determination is based strictly on a review of the applicable statutes, and is therefore considered *de novo*. *See, e.g., George Kabeller, Inc. v. Busey*, 999 F.2d 1417, 1421 (11th Cir. 1993) ("Whether judicial review . . . is vested exclusively in the Court of Appeals, is a question of law subject to *de novo* review.").

The Commission brought this action pursuant to the Fund Act, 26 U.S.C. § 9010(b). That section authorizes the Commission "through attorneys and counsel

9

described in subsection (a) to appear in the district courts of the United States to seek recovery of any amounts determined to be payable to the Secretary of the Treasury as a result of examination and audit made pursuant to section 9007." *Id.* As already noted, the provisions of section 9007 governed the Commission's audit of the RPUSA and the determination that the RPUSA had to repay the sum of $333,558. Furthermore, the Fund Act provides that "all determinations made by" the Commission "under this chapter, shall be final and conclusive, except to the extent that they are subject to examination and audit by the Commission under section 9007 and judicial review under section 9011." 26 U.S.C. § 9005(b).

In defending the action seeking recovery of the amount determined to be payable to the Secretary of the Treasury, the RPUSA presented defenses and filed its counterclaim relying on section 9011(b). Section 9011, entitled "Judicial Review," provides, in pertinent part:

> (a) *Review of certification, determination, or other action by the Commission.* Any certification, determination, or other action by the Commission made or taken pursuant to the provisions of this chapter shall be subject to review by the United States Court of Appeals for the District of Columbia upon petition filed in such Court by any interested person. Any petition filed pursuant to this section shall be filed within thirty days after the certification, determination, or other action by the Commission. . . .

> (b) *Suits to implement chapter.*

10

(1) The Commission, the national committee of any political party, and individuals eligible to vote for President are authorized to institute such actions, including actions for declaratory judgment or injunctive relief, as may be appropriate to implement or construe any provisions of this chapter.

(2) The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this subsection and shall exercise the same without regard to whether a person asserting rights under provisions of this subsection shall have exhausted any administrative or other remedies that may be provided at law. Such proceedings shall be heard and determined by a court of three judges. . . .

The RPUSA insists that section 9011(b)(2) gave the district court the jurisdiction to entertain the counterclaim, which sought a declaration concerning implementation or construction of the provisions of the Fund Act.[5]

The issue presented is strictly one of statutory construction. It is a well-known maxim of statutory construction that a court must begin "with the language of the statute itself." *In re T.H. Orlando Ltd.*, 391 F.3d 1287, 1291 (11th Cir. 2004) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)). In this Circuit,

[t]o illuminate statutory intent, we apply the traditional tools of statutory construction. Though malleable, our

---

[5] The RPUSA also based jurisdiction over the counterclaim on 28 U.S.C. §§ 2201 and 2202. The Declaratory Judgment Act does not, of itself, confer jurisdiction upon the federal courts. *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989). Rather, a suit brought under the Act must state some independent source of jurisdiction. *Id.*

methodology is subject to certain rules. "The first rule in statutory construction is to determine whether the 'language at issue has a plain and unambiguous meaning with regard to the particular dispute.'" *United States v. Fisher*, 289 F.3d 1329, 1337-38 (11th Cir. 2002), *cert. denied*, 537 U.S. 1112, 123 S.Ct. 903, 154 L.Ed.2d 786 (2003)(citation omitted). "[W]e must presume that Congress said what it meant and meant what it said." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998)(en banc). "In our circuit, '[w]hen the import of the words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language.'" *United States v. Weaver*, 275 F.3d 1320, 1331 (11th Cir. 2001) (quoting *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000)(en banc)), *cert. denied*, 536 U.S. 961, 122 S.Ct. 2666, 153 L.Ed.2d 840 (2002).

*Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003). These principles of statutory construction support the district court's conclusion that the exclusive forum for consideration of the issues raised in the defenses and counterclaim is the D.C. Circuit.

The statutory text clearly designates the D.C. Circuit as the forum for judicial review of "[a]ny certification, determination, or other action" by the Commission. 26 U.S.C. § 9011(a). Furthermore, a thirty-day time period is established for any petition seeking judicial review of such action by the Commission. *Id.* Section 9011(b), in contrast, gives district courts jurisdiction over suits that seek to implement the chapter. In order for the two subsections of section 9011 to have meaning, those

12

actions covered by subsection (b), which may be entertained by courts other than the D.C. Circuit, must be suits that do not concern review of certifications, determinations, or other actions by the Commission.

Here, the counterclaim did not seek to implement provisions of the chapter, but rather, to challenge the repayment determination of the Commission. While the RPUSA sought to couch the counterclaim as a suit over "implementation or construction" of provisions of the chapter,[6] what the counterclaim challenged was the "determination" of the Commission that the RPUSA had to repay $333,558. The challenges to the repayment determination consisted of arguments that the determination was "arbitrary and capricious," that it was "time-barred," that the Convention Committee is a separate organization from the RPUSA, and that the RPUSA had not received adequate notice and an opportunity to be heard because all notices had been directed to the Convention Committee. All of these claims, also presented as defenses in the answer, could have and should have properly been presented before the D.C. Circuit under section 9011(a), but were not. *See, e.g., Simon v. FEC*, 53 F.3d 356 (D.C. Cir. 1995) (addressing claim that notification of

---

[6] For example, the counterclaim sought a declaratory judgment concerning "the proper construction of 26 USC §9008(c) and 2 USC §437(2), relating to permissible uses of federal funds for presidential nominating conventions, when applied to the facts of this case; and, the proper construction of 26 USC §9008(h), relating to repayment obligations, when applied to the facts of this case." (R1-26 at 7).

13

obligation to pay was untimely); *Doe v. FAA*, 432 F.3d 1259, 1263 (11th Cir. 2005) (constitutional due process claims that required a "review of the procedures and actions taken by the FAA". . . "fall within the ambit of the administrative scheme, and the district court is without subject-matter jurisdiction.").

Where "Congress. . . specifically designates a forum for judicial review of administrative action, that forum is exclusive. . . ." *Drummond Coal Co. v. Watt*, 735 F.2d 469, 475 (11th Cir. 1984) (quotation, citations omitted) (finding that the federal district court for the District of Columbia had exclusive jurisdiction to hear challenge to national regulations implementing abandoned mine land reclamation program established by the Surface Mining Control and Reclamation Act). Furthermore, the statute need not use the word "exclusive" to signify an exclusive remedy for review of administrative action. *Id. See also Telecomm. Research and Action Ctr. v. FCC*, 750 F. 2d 70, 77 (D.C. Cir. 1984) ("[E]ven where Congress has not expressly stated that statutory jurisdiction is 'exclusive' . . . a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute."). Although the suit filed in the D.C. Circuit had already been dismissed as time-barred, review before the D.C. Circuit pursuant to section 9011(a) was the exclusive vehicle by which the RPUSA could assert its defenses and counterclaim.

The Court discerns no reason to depart from the lower court's conclusion

14

affirming the "final and conclusive," 26 U.S.C. § 9005(b), decision of the Commission, and its related finding that exclusive jurisdiction to consider the defenses and counterclaim was to be found in the plain language of section 9011(a). Nevertheless, the RPUSA insists that it was deprived of the opportunity to engage in discovery, and therefore, at a minimum, that the summary judgment order is procedurally defective. Without addressing the record evidence concerning the RPUSA's ample opportunity for discovery, the RPUSA has not demonstrated how discovery would have assisted it in rebutting the Commission's showing of the absence of any genuine issues of fact concerning the final and conclusive repayment determination. *See, e.g., Reflectone, Inc. v. Farrand Optical Co., Inc.*, 862 F.2d 841, 843 (11th Cir. 1989) (the party seeking to avoid summary judgment on the ground that additional discovery is necessary, "must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."). Thus, we find no procedural irregularity in the grant of summary judgment.

The final argument we briefly address is the claim that the language enjoining the RPUSA "from diverting any of its assets to any other expenditures other than payment of federal taxes until it completes its repayment obligation," violates the first amendment. The RPUSA was aware that the Commission was seeking injunctive

relief pursuant to 31 U.S.C. § 3713 and 11 C.F.R. § 9008.12(a)(3), because it was set forth in the complaint, and because the Commission had raised the prospect of injunctive relief in the summary judgment motion and the accompanying proposed order filed with the motion. The argument that the injunction violates the first amendment, however, is raised for the first time on appeal. Accordingly, that argument is not considered. *See Sterling Fin. Inv. Group, Inc. v. Hammer*, 393 F.3d 1223, 1226 (11th Cir. 2004).

## III.  CONCLUSION

Finding no error in the lower court's order, **WE AFFIRM**.  Furthermore, **WE REMAND** for  additional proceedings to address any unresolved issues that may be presented in the counterclaim and/or the cross-claims.

SO ORDERED.