Paul SIMON, et al., Petitioners,

v.

FEDERAL ELECTION COMMISSION, Respondent.

No. 93–1252.

United States Court of Appeals, District of Columbia Circuit.

Argued March 6, 1995.

Decided May 5, 1995.

---

Leslie J. Kerman, Washington, DC, argued the cause, for petitioners. With her on the briefs, was Stuart M. Gerson, Washington, DC.

Richard B. Bader, Associate Gen. Counsel, Federal Election Com'n., Washington, DC, argued the cause, for respondent. With him on the brief, were Lawrence P. Noble, Gen. Counsel, and Vivien Clair, Atty., Federal Election Com'n., Washington, DC.

Before SENTELLE, HENDERSON and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This is a petition for review of a Federal Election Commission final repayment determination ordering petitioners Paul Simon and Paul Simon for President, Inc., to repay $412,162.87 in matching funds to the United States Treasury. Petitioners argue, *inter alia*, that the Commission was time-barred, pursuant to the Presidential Primary Matching Payment Account Act, 26 U.S.C. § 9038 (1988), from imposing this repayment obligation because the Commission did not notify petitioners of their repayment claims within three years as required by the statute. Because we agree that repayment determinations must be issued within the three-year statutory period, we reverse the Commission's ruling.

## I. BACKGROUND

The Presidential Primary Matching Payment Account Act ("the Matching Payment Act" or "the Act"), 26 U.S.C. §§ 9031–9042 (1988), was enacted in 1974 to provide partial federal financing for the campaigns of qualifying presidential primary candidates. Once a candidate's eligibility is established under the Act, he is entitled to receive payments from the Presidential Primary Matching Payment Account to match individual contributions up to $250. 26 U.S.C. §§ 9034(a) & 9037. Candidates may only use these funds to defray "qualified campaign expenses," defined as expenses incurred in connection with the campaign for the presidential nomination that do not violate federal or state law. 26 U.S.C. § 9032(9); 11 C.F.R. § 9034.4(a) (1995). The Act places limits on each candidate's expenditures. Expenditures in excess of these limits are not "qualified campaign expenses" for which candidates may use their matching funds. 11 C.F.R. § 9038.2(b) (1995).

The Act requires the Federal Election Commission ("the Commission" or "FEC") to conduct a thorough examination and audit of the campaign finances of every publicly funded candidate after the campaign for the nomination ends. 26 U.S.C. § 9038(a); 11 C.F.R. § 9038.1 (1995). If the Commission determines that "any portion of the payments made to a candidate from the matching payment account was in excess of the aggregate amount of payments to which [the] candidate was entitled under section 9034, it shall notify the candidate, and the candidate shall pay to the Secretary an amount equal to the amount of excess payments." 26 U.S.C. § 9038(b)(1). Similarly, if the Commission determines that any portion of the payments was used for a purpose other than to defray qualified campaign expenses, the Commission shall "notify the candidate of the amount so used, and the candidate shall pay to the Secretary an amount equal to such amount." 26 U.S.C. § 9038(b)(2).

In 1987, Senator Paul Simon became a candidate for the Democratic nomination for President of the United States. Pursuant to the Matching Payment Act, Senator Simon

qualified for and received a total of $3,774,-344.77 in federal matching fund payments. These payments were deposited into the account of Paul Simon for President, Inc. ("the Committee"), Senator Simon's principal campaign committee for the 1988 campaign. On April 7, 1988, Simon suspended his candidacy. The Commission subsequently conducted an audit of the Committee's records to determine whether Simon would have to repay any of the matching funds he received, pursuant to § 9038(b). The Commission's Audit Division initiated its investigation on July 25, 1988, and issued an interim audit report to the Committee on July 10, 1990, containing preliminary calculations regarding possible future repayment to the United States Treasury.

Pursuant to the Commission's regulations, 11 C.F.R. § 9038.1(c)(v)(2), the Committee filed its written responses to the preliminary calculations on January 11 and 31, 1991. The Commission had previously granted the Committee several extensions of time to file these responses. In a letter dated January 16, 1991, the Audit Division, however, notified the Committee that the Commission had denied in part the Committee's request for a further extension of time, asserting "the Commission is mindful that the statute of limitations contained in 26 U.S.C. § 9038(c) expires on July 20, 1991."

26 U.S.C. § 9038(c) provides that "[n]o notification shall be made by the Commission under subsection (b) with respect to a matching period more than 3 years after the end of such period." The period ends on the date the national convention of the party whose nomination a candidate seeks nominates its candidate for President. 26 U.S.C. § 9032(6). In this case, the matching payment period ended on July 20, 1988, the date the Democratic National Convention nominated Michael Dukakis for President. Thus, the three-year statutory notification period terminated on July 20, 1991. On July 17, 1991, three days prior to the expiration of the period, the Commission delivered the Committee a letter asserting that the Committee's receipt of the interim audit report one year earlier satisfied the three-year notification period under § 9038(c).

On October 22, 1991, the Commission approved the final audit report containing its initial repayment determination, required by 11 C.F.R. § 9038.1(d). The report concluded the Committee must repay $430,465.03. On November 20, 1991, the Committee requested an oral hearing to respond to the Commission's initial repayment determination, pursuant to 11 C.F.R. § 9038.2(c)(3). The Committee also sought a sixty-day extension in which to file a written response. The Commission granted the extension, and informed the Committee it would consider the request for an oral presentation after the Committee submitted its written response to the final audit report. The Committee filed its written response on January 31, 1992, raising challenges to the repayment determination. The Commission held an oral presentation on August 5, 1992. On August 14, 1992, the Committee submitted additional documentation to support its contentions.

The Commission issued a final repayment determination to the Committee on March 4, 1993, requiring it to repay $412,162.87 to the U.S. Treasury, based on the Commission's finding that the Committee had used public funds for nonqualified campaign expenses as well as having received matching funds in excess of its entitlement. 26 U.S.C. § 9038(b)(1)–(2). The Commission made a demand for repayment on March 12, 1993. In an accompanying statement of reasons the Commission rejected the Committee's position that the Commission's demand for repayment was time-barred, ruling that, while its initial and final repayment determinations were issued after the expiration of the statutory deadline, the interim audit report satisfied the three-year notification requirement in both the Act and FEC regulations. This petition for review followed.

## II. DISCUSSION

Petitioners argue that the FEC cannot require them to repay $412,162.87 to the United States Treasury because the Commission issued its final repayment determination to petitioners in March 1993, more than nineteen months after the expiration of the statutory notification period, 26 U.S.C. § 9038(c), contained in the Matching Payment Act.

Specifically, they argue that § 9038(c) prohibits the Commission from issuing *any* repayment notifications later than July 20, 1991, three years after the end of the matching payment period. They further contend that the Commission's reliance on the issuance of the interim audit report as constituting sufficient compliance with the notification requirement is contrary to the clear structure and plain language of the Act.

■ We agree with petitioners, at least to the extent that notification of the initial repayment determination must be made within the three-year period. Section 9038, entitled "Examinations and audits; repayments," governs the determination and remediation of the candidate's repayment obligations. Subsection 9038(a), entitled "Examinations and audits," directs the Commission to conduct a thorough examination and audit of the qualified campaign expenses of every candidate and his committee(s) who received payments under the Act. In subsection 9038(b), "Repayments," the statute mandates that when the Commission has determined that a candidate has either received an excess of public funds (§ 9038(b)(1)), or improperly spent any of the funds (§ 9038(b)(2)), the Commission "shall notify the candidate," and requires that "the candidate shall pay to the Secretary an amount equal to the amount of excess payment." [1] 26 U.S.C. § 9038(b)(1). In the case of Simon, the Commission determined that its audit revealed non-qualified expenditures recoupable under § 9038(b) in the amount of $430,465.03, later reduced to $412,162.87 after oral hearing. The difficulty is that the Commission did not notify the candidate of the amount it contended he was obligated to repay (that is the original $430,465.03) until October 22, 1991, over three months after the expiration of the three-year period after the end of the matching-payment period.

Subsection 9038(c) provides, "No notification shall be made by the Commission under subsection (b) with respect to a matching payment period more than 3 years after the end of such period." The FEC argues that under its interpretation of the statute, its furnishing the candidate with a copy of the interim audit report constitutes compliance with the notification requirement of § 9038. As the FEC provided the audit report within the three-year period, the Commission asserts that the repayment demand is not time-barred.

■ In support of this assertion, the FEC reminds us that we must defer to an agency's reasonable interpretation of the statute it administers. However, we only defer to such an interpretation if the statute is ambiguous on the issue in dispute. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If the text of the statute is clear, we "must give effect to the unambiguously expressed intent of Congress." *Id.* In § 9038 there is no ambiguity in the notification requirement. Subsection 9038(b) requires that the Commission notify the candidate of the amount which he is to pay to the Secretary. The interim audit report does not even purport to notify the candidate of any such amount. No obligation arises on the part of the candidate until he has received notice of the amount which the Commission determines is due as repayment. The interim audit report is no more than its name implies, a progress report of the continuing audit.

Even if we accepted the Commission's position that there is a sufficient ambiguity in the statute to warrant the application of *Chevron* analysis, the Commission's own authoritative interpretations are by no means strong support for its position in this litigation. Under the Commission's own rule, interim audit reports may include preliminary calculations regarding future payments to the U.S. Treasury, but are not required to do so. 11 C.F.R. § 9038.1(c)(1)(v). In a separate section entitled "Repayments," 11 C.F.R. § 9038.2, the Commission established binding procedures for the repayment determinations, which must include an actual mon-

---

1. While we recognize the notification provision in § 9038(b)(2) is worded slightly differently, both notification provisions carry the same meaning. Section 9038(b)(2) states the Commis-

sion "shall notify such candidate of the amount so used, and the candidate shall pay to the Secretary an amount equal to such amount."

etary figure owed by the candidate. In 1983, the Commission added a provision in its regulations making the interim audit report a mandatory step in the audit process. In the "Explanation and Justification" issued when the Commission promulgated this rule, the Commission noted that the "preliminary calculations will not, however, be considered as the Commission's initial repayment determination. . . ." 48 Fed.Reg. 5,224, 5,232 (Feb. 4, 1983). Furthermore, 11 C.F.R. § 9038.2(a)(2) (1988), mandates that the "Commission will notify the candidate of any repayment determinations made under this section as soon as possible, but not later than 3 years after the end of the matching payment period." Thus the Commission's own interpretations have generally followed the logic of the statute: that is, an interim audit report does not constitute notification under 26 U.S.C. § 9038 of a repayment obligation which the FEC, itself, has at that point not yet determined.

■ The Commission counters that it amended 11 C.F.R. § 9038.2(a)(2) in 1991 to add a sentence explicitly stating that "[t]he Commission's issuance of an interim audit report to the candidate under 11 CFR 9038.1(c) will constitute notification for purposes of the 3 year period." Petitioners assert that this amendment, if it has any force, can apply only prospectively; the FEC argues that it should apply retroactively. We need not resolve the retroactivity issue. For the reasons we have already stated, this regulation is inconsistent with the statute. We do not dispute the broad delegation of authority to the Commission to "formulate policy with respect to [The Matching Payment Act]," 2 U.S.C. § 437c(b)(1) or "to make, amend, and repeal such rules . . . as are necessary to carry out the provisions of [the Act]." 2 U.S.C. § 437d(a)(8). But, under *Chevron,* and general principles of law, no such administrative action by the Commission can override the plain mandate of the legislation.

The Commission argues that a consequence of our holding is that candidates will take advantage of the opportunities to respond solely to prolong the repayment determination process, and thus avoid repaying any amount to the U.S. Treasury altogether. This argument is a red herring. The Commission is not required to grant candidates' requests for extensions of time. In this case, for instance, the Commission granted petitioners several extensions, totaling 170 days. Under 11 C.F.R. § 9038.4, the Commission has discretion to deny these requests. As a result, a candidate can only prolong the repayment determination process beyond the three-year statutory period with the Commission's assistance.

The parties advance other arguments which we have not discussed as they are not necessary to the disposition of the controversy under our rationale as set forth above. We do think one argument worthy of mention, that is the contention of the petitioners that all the relevant actions by the Commission in the conduct of the audit and repayment demand were unlawful as the Commission itself was unconstitutionally comprised during that period under *Federal Election Commission v. NRA Political Victory Fund,* 6 F.3d 821 (D.C.Cir.1993), *aff'd. on other grounds,* —— U.S. ——, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994). Between the filing of briefs in this case and the issuance of this opinion, we disposed of this argument in *Robertson v. Federal Election Commission,* 45 F.3d 486 (D.C.Cir.1995).

## III. CONCLUSION

For the foregoing reasons, we find the Commission time-barred from requiring petitioners to return $412,162.87 to the U.S. Treasury. We thus reverse the Commission's decision.

*It is so ordered.*