Michael S. DUKAKIS, et al., Petitioners,

v.

FEDERAL ELECTION COMMISSION,
Respondent.

No. 93–1219.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 6, 1995.

Decided May 5, 1995.

Peter E. Ball, Boston, MA, argued the cause for petitioners. With him on the briefs was Daniel A. Taylor, Boston, MA, Dennis W. Townley, Boston, MA, entered an appearance for petitioners.

Richard B. Bader, Associate Gen. Counsel, Federal Election Com'n, Washington, DC, argued the cause for respondent. With him on the brief were Lawrence M. Noble, Gen. Counsel, and Vivien Clair, Attorney, Federal Election Com'n, Washington, DC.

Before SENTELLE, HENDERSON, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This is a petition for review of a Federal Election Commission final repayment determination, ordering petitioners, Michael Dukakis and the Dukakis for President Committee, Inc. ("the Committee"), to repay $491,-282.31 in matching funds to the United States Treasury. Petitioners argue the Commission is time-barred from imposing this repayment obligation on them, pursuant to the Presidential Primary Matching Payment Account Act, 26 U.S.C. § 9031 *et seq.* (1988), because the Federal Election Commission ("the Commission") did not issue its final repayment determination until a year and a half after the statutory notification period expired. On the basis of our decision in *Simon v. Federal Election Commission,* 53 F.3d 356 (D.C.Cir.1995), we reverse the Commission's ruling.

I. BACKGROUND

Because both the factual and legal issues presented are nearly identical to those raised and discussed in detail in *Simon v. Federal Election Commission,* 53 F.3d 356 (D.C.Cir. 1995), we will present an abbreviated discussion here. Michael Dukakis was a candidate for the Democratic Party's nomination for President of the United States in the 1988 election. Before Dukakis received his party's nomination on July 20, 1988, the Com-

mittee received federal matching funds pursuant to the Presidential Primary Matching Payment Account Act ("the Matching Payment Act," or "the Act"), 26 U.S.C. § 9031 *et seq.*, to help defray campaign costs. The Act requires the Commission to conduct an audit of the campaign finances of every publicly funded candidate after the party nomination ends. 26 U.S.C. § 9038(a); 11 C.F.R. § 9038.1(a) (1995). Pursuant to the Act and its regulations, the Commission approved an interim audit report on the Committee on February 14, 1990. On June 15, 1990, the Committee submitted its response to the audit report. On December 9, 1991, the Commission issued its final audit report, containing an initial repayment determination, *see* 11 C.F.R. § 9038.1(d), recommending petitioners repay $492,164.13 to the U.S. Treasury. On February 25, 1993, the Commission made its final repayment determination, asserting petitioners owed the Treasury $491,282.31.

Under 26 U.S.C. § 9038(b), the Commission is required to notify a candidate if he owes funds to the Treasury. Section 9038(c) requires that no notification be sent more than three years from the end of the matching payment period. The period ends on the date the national convention of the party whose nomination a candidate seeks nominates its candidate for President. 26 U.S.C. § 9032(6). Here, the matching payment period ended July 20, 1988, the day Dukakis was nominated for President. Consequently, the three-year statutory notification period terminated July 1991. Thus, while the Commission issued its interim audit report within the three-year statutory period, the Commission did not issue either its initial repayment determination or its final repayment determination until after the period's expiration. *See* 26 U.S.C. § 9038(c). Petitioners appealed this order.

## II. DISCUSSION

 Petitioners maintain the Commission is time-barred, pursuant to 26 U.S.C.

§ 9038, from ordering petitioners to repay $491,282.31 to the U.S. Treasury. Specifically, petitioners assert the Commission's issuance of an interim audit report within the three-year statutory notification period did not constitute sufficient notice under the statute. We addressed this exact argument in *Simon, supra,* agreeing with petitioners' interpretation of the statute.

Nonetheless, one distinction exists between this case and *Simon.* In *Simon,* the Commission determined the petitioners owed funds to the U.S. Treasury, pursuant to 26 U.S.C. § 9038(b)(1) and (2). Language in each of those provisions expressly directs the Commission to notify the candidate that he owes the government funds, and declares that the candidate must pay to the Secretary an amount equal to the amount of any excess payments received, *id.* at § 9038(b)(1), or an amount equal to that used for nonqualified campaign expenses, *id.* at § 9038(b)(2). Unlike the amount owed by petitioners in *Simon,* however, a portion of the $491,282.31 which the Dukakis Committee had to repay to the Treasury was comprised of surplus campaign funds. The Matching Payment Act requires a candidate with surplus funds, pursuant to § 9038(b)(3), to repay to the Treasury the percentage of those funds attributable to matching payments.[1]

Section 9038(b)(3), in contrast to §§ 9038(b)(1) and (2), does not contain an explicit notification provision. The statutory language imposes the repayment obligation on all candidates with a surplus, without specifying any threshold Commission action. Accordingly, the Commission argues the three-year statutory limitation period is inapplicable with regard to the surplus issue. Consequently, the Commission asserts we must remand this case for a determination of the amount of additional surplus repayments imposed on petitioners.

We disagree. Section 9038(b)(3), as petitioners point out, is intended to apply only

---

1. Regarding surplus funds, § 9038(b)(3) states: After all obligations have been liquidated, that portion of any unexpended balance remaining in the candidate's accounts which bears the same ratio to the total unexpended balance as the total amount received from the matching payment account bears to the total of all deposits made into the candidate's accounts shall be promptly repaid to the matching payment account.

where a candidate does not dispute his campaign has a surplus, and realizes he must repay a percentage of these funds. For this reason, the provision is self-executing, requiring no Commission-initiated conduct. The statute is silent, however, where a candidate disputes whether he has a surplus. During the repayment-determination process here, petitioners argued they were in a deficit position. It is unreasonable to presume Congress mandated the Commission to notify each candidate within three years of the end of the matching payment period of all other repayment determinations, *see* 26 U.S.C. § 9038(c), while allowing the Commission to wait literally forever to determine whether a candidate is in a surplus position, especially so as all repayment obligations are disclosed by the same audit.

Therefore, the statutory design of § 9038 compels us to conclude the three-year limitation period regarding notification, *see* 26 U.S.C. § 9038(c), applies with equal force where a candidate disputes a Commission finding that his campaign is in a surplus position. As a result, no reason exists to remand this case for further proceedings regarding the surplus issue.

The petition for review is granted, and the decision of the Commission reversed.